# IN THE SUPREME COURT, STATE OF WYOMING

## 2024 WY 23

### OCTOBER TERM, A.D. 2023

February 28, 2024

JERRY PETERSON,

Appellant
(Petitioner),

v.

S-23-0149

LARAMIE CITY COUNCIL,

Appellee
(Respondent).

*Appeal from the District Court of Albany County*
The Honorable Misha E. Westby, Judge

*Representing Appellant:*
Cassie Craven, Longhorn Law Limited Liability Company, Cheyenne, Wyoming.

*Representing Appellee:*
J. Mark Stewart, Davis & Cannon, LLP, Cheyenne, Wyoming.

*Before FOX, C.J., and KAUTZ, BOOMGAARDEN, GRAY, and FENN, JJ.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of typographical or other formal errors so correction may be made before final publication in the permanent volume.**

**KAUTZ, Justice.**

[¶1]     Jerry Peterson filed a declaratory judgment complaint against the Laramie City Council (City Council or Council), claiming it violated the Wyoming Public Meetings Act by holding its meetings remotely during and after the COVID-19 pandemic.  The district court dismissed the complaint based on laches.  We reverse and remand.

## ISSUE

[¶2]     The dispositive issue on appeal is:  Did the district court err by dismissing Mr. Peterson's declaratory judgment complaint against the City Council on the basis of laches?

## FACTS

[¶3]     The district court granted the City Council's motion to dismiss under Wyoming Rule of Civil Procedure (W.R.C.P.) 12(b)(6); consequently, the only facts recited here are those alleged in Mr. Peterson's declaratory judgment complaint, including information from attachments incorporated into the complaint.  *SH v. Campbell Cnty. Sch. Dist.,* 2018 WY 11, ¶ 5, 409 P.3d 1231, 1233 (Wyo. 2018) (reviewing complaint and attachments on a motion to dismiss).

[¶4]     In March 2020, the City Council began prohibiting in-person attendance at its meetings due to the COVID-19 pandemic.  On March 24, 2020, it issued Resolution 2020-17, which, in accordance with the Governor's and the Wyoming State Health Officer's Public Health Orders, closed "places of public accommodation" and prohibited gatherings of "10 or more people" in "a single confined space at the same time."  On April 21, 2020, the Council passed Resolution 2020-24, which allowed it to meet remotely through "telephone or web conferencing."  The City Council used the Zoom web-conferencing platform, and the public apparently had the opportunity to comment through Zoom during the meetings.  Resolution 2020-24 was "effective and retroactive [to] March 1, 2020[,] and until Public Health Orders restricting gatherings of 10 people or more [were] lifted or expire[d]."  The Governor lifted the ban on gatherings of 10 or more people in May 2020, but the City Council continued to prohibit in-person meetings.  The City Council passed Resolution 2021-07 in January 2021, reiterating the prohibition on in-person meetings based on its mistaken understanding that gatherings were still restricted to fewer than 10 people.

[¶5]     In January 2022, the City Council passed resolution 2022-2 again forbidding in-person meetings and allowing attendance "only [through] telephone or web conferencing."  The order was to remain in effect "until rescinded by [the] Council or the end of the COVID-19 pandemic . . . ."  On March 14, 2022, the Governor signed an executive order formally "declaring the end to the State of Emergency and Public Health Emergency relating to the COVID-19 pandemic."  The City Council, however, continued to meet

1

remotely throughout 2022 and did not provide the opportunity for in-person attendance at its meetings.

[¶6] Mr. Peterson filed his declaratory judgment complaint on January 4, 2023.[1] He alleged the City Council violated the Wyoming Public Meetings Act, Wyo. Stat. Ann. §§ 16-4-401 through 16-4-408, by refusing to allow in-person attendance at its meetings from when the Governor lifted the restriction on gatherings of 10 or more persons in May 2020 through November 2022.[2] Mr. Peterson asserted the City Council denied him entry to its meetings approximately four times per month during this time period. He claimed the "[Z]oom format" presented a "condition precedent" to attendance at the City Council meetings in violation of § 16-4-403(b), which states: "A member of the public is not required as a condition of attendance at any meeting to register his name, to supply information, to complete a questionnaire, or fulfill any other condition precedent to his attendance." Mr. Peterson also contested the validity of several of the Council's resolutions prohibiting in-person attendance at its meetings because they were based on incorrect information about COVID-19 restrictions. His prayer for relief requested: 1) a court order directing the Council "to conduct legal public meetings in accord with the requirements" of the Wyoming Public Meetings Act; 2) "[c]ivil damages in accord with statutory allowances"; 3) "[a]n award of attorney fees due to the willful and damaging nature of excluding the public from public meetings"; and 4) a "declaratory judgment . . . that meetings held since May 15, 2020[,] were illegal, out of accord with statute and as such void under law, including the decisions made at said illegal meetings."

[¶7] The City Council filed a motion to dismiss under W.R.C.P. 12(b)(6) arguing Mr. Peterson's claims were barred by laches because he inexcusably delayed filing suit. It asserted: 1) Mr. Peterson delayed for approximately two and one-half years in filing his claim about the 2020 meetings because it ripened in May 2020 when the Governor revoked the restriction on in-person meetings of 10 persons or more; 2) he delayed two years in registering his claim about the 2021 meetings because it matured when the City Council adopted Resolution 2021-07 in January 2021 prohibiting in-person meetings based on the mistaken belief that meetings were still restricted to fewer than 10 persons; and 3) he delayed over nine months in bringing his claim about the 2022 meetings because it ripened when the Governor declared an end to the Public Health Emergency on March 14, 2022.

---

[1] On January 3, 2023 (the day before Mr. Peterson filed his complaint), the City Council resolved to hold its 2023 public meetings at the City Hall and allow attendance both "in person" and "via web-conferencing." Mr. Peterson did not acknowledge the 2023 resolution in his complaint; instead, he claimed the City Council's meetings "remain[ed] closed to the public" and "this practice [was] expected to continue indefinitely." The district court took judicial notice of the 2023 resolution even though Mr. Peterson did not refer to it in his complaint. However, the court did not base its dismissal of Mr. Peterson's complaint on the 2023 resolution, and the effect of that resolution is not an issue in this appeal.

[2] The record does not reveal an explanation for why Mr. Peterson did not include the December 2022 meetings within the scope of his complaint, given the City Council also prohibited in-person attendance during that month.

2

The City Council also maintained that granting Mr. Peterson's requested relief by declaring all its actions during the relevant period null and void would injure and prejudice the Council and the "citizenry" which relied on those actions, including for example, businesses, vendors, and contractors that obtained licenses or were paid during the period. To support its claim of prejudice, the Council attached an affidavit from the City Clerk which included a list of actions taken in August 2022 and general links to the City Council's website where its meeting minutes and ordinances were posted.

[¶8]   After a hearing, the district court granted the City Council's motion to dismiss. Although it did not convert the motion to dismiss to a motion for summary judgment, it considered information outside the complaint by taking "judicial notice" of it.  The court grouped all of Mr. Peterson's claims together and ruled they were barred by laches because they "ripened" in May 2020, and the injury and prejudice which would result from "undoing nearly three-years' worth of decisions" by the City Council was "manifest and need[ed] no further elaboration."  Mr. Peterson filed a timely notice of appeal.

### STANDARD OF REVIEW

[¶9]   The district court dismissed Mr. Peterson's complaint for "failure to state a claim upon which relief can be granted" under W.R.C.P. 12(b)(6).  When reviewing a Rule 12(b)(6) dismissal, "[w]e conduct a *de novo* review of the materials that were before the district court."  *Matter of Est. of Britain,* 2018 WY 101, ¶ 11, 425 P.3d 978, 981 (Wyo. 2018) (citing *Bush Land Dev. Co. v. Crook Cnty. Weed & Pest Control Dist.,* 2017 WY 12, ¶ 7, 388 P.3d 536, 539 (Wyo. 2017)) (other citations omitted).  "'[W]e accept the facts stated in the complaint as true and view them in the light most favorable to the plaintiff.'" *Woodie v. Whitesell,* 2019 WY 115, ¶ 22, 451 P.3d 1152, 1158 (Wyo. 2019) (quoting *DeLoge v. Homar*, 2013 WY 33, ¶ 9, 297 P.3d 117, 120 (Wyo. 2013)).  Dismissal is a drastic remedy which should be used cautiously; however, a motion to dismiss "'is the proper method for testing the legal sufficiency of the allegations and will be sustained when the complaint shows on its face that the plaintiff is not entitled to relief.'"  *Britain,* ¶ 11, 425 P.3d at 981-82 (quoting *WW Enters., Inc. v. City of Cheyenne,* 956 P.2d 353, 355 (Wyo. 1998), and *Feltner v. Casey Fam. Program,* 902 P.2d 206, 208 (Wyo. 1995)) (other citations omitted).

[¶10]  The parties suggest the district court's decision on laches should be reviewed using an abuse of discretion standard.  In doing so, they ignore that the district court dismissed this case under W.R.C.P. 12(b)(6) for failure to state a claim upon which relief may be granted.  There is no place for an abuse of discretion analysis in reviewing a Rule 12(b)(6) dismissal of the plaintiff's complaint. *See generally, Guy v. Lampert,* 2015 WY 148, ¶¶ 2, 12, 362 P.3d 331, 333, 335 (Wyo. 2015) (reviewing a dismissal using the typical Rule 12(b)(6) analysis instead of the abuse of discretion standard suggested by the appellant in his statement of the issues on appeal); *Feltner,* 902 P.2d at 207-08 (same).

3

## DISCUSSION

[¶11]   The district court dismissed Mr. Peterson's complaint after concluding his claims were barred by laches.

> "Laches bars a claim when a party has delayed in enforcing its rights to the disadvantage of another. *Windsor Energy Grp., L.L.C. v. Noble Energy, Inc.*, 2014 WY 96, ¶ 12, 330 P.3d 285, 288 (Wyo. 2014) (citing *Dorsett v. Moore*, 2003 WY 7, ¶ 9, 61 P.3d 1221, 1224 (Wyo. 2003)). The defense of laches is based in equity and whether it applies in a given case depends upon the circumstances. *Id*., ¶ 12, 330 P.3d at 288–89 (quoting *Ultra Resources, Inc. v. Hartman*, 2010 WY 36, ¶ 123, 226 P.3d 889, 929 (Wyo. 2010)). Two elements must be proven to establish laches: 1) inexcusable delay; and 2) injury, prejudice, or disadvantage to the defendants or others. *Id*., ¶ 12, 330 P.3d at 289 (citing *Moncrief [v. Sohio Petroleum Co.]*, 775 P.2d [1021,] 1025 [(Wyo. 1989)]). The existence of laches is primarily determined not by lapse of time but by considerations of justice. *Merrill v. Rocky Mountain Cattle Co.*, 26 Wyo. 219, 181 P. 964, 974 (1919) (citation omitted)."

*EOG Res., Inc. v. JJLM Land, LLC,* 2022 WY 162, ¶ 33, 522 P.3d 605, 614-15 (Wyo. 2022) (quoting *Tram Tower Townhouse Ass'n v. Weiner*, 2022 WY 58, ¶ 44, 509 P.3d 357, 367 (Wyo. 2022)) (internal quotation marks omitted).  *See also, United States v. Rodriguez-Aguirre,* 264 F.3d 1195, 1208 (10th Cir. 2001) ("In order to prove the affirmative defense of laches, the defendant must demonstrate that there has been an unreasonable delay in asserting the claim and that the defendant was materially prejudiced by the delay.") (emphasis omitted).  "Laches, in legal significance, is not mere delay, but delay that works a disadvantage to another."  *Rodriguez-Aguirre,* 264 F.3d at 1208.

[¶12]   Because of the fact-dependent nature of a laches defense, "[t]he strictures of Rule 12(b)(6), wherein dismissal of the claim is based solely on the complainant's pleading, are not readily applicable to [its] determination[.]"  *Advanced Cardiovascular Sys., Inc. v. Scimed Life Sys., Inc.*, 988 F.2d 1157, 1161 (Fed. Cir. 1993).  *See also, Jordan v. Sprint Nextel Corp.*, 3 F.Supp.3d 917, 929 (D. Kan. 2014) (a Fed. R. Civ. P. 12(b)(6) motion to dismiss based solely on the complaint is "not readily applicable to a determination of laches") (citation omitted).  Factual development beyond the contents of the complaint is usually necessary to demonstrate unreasonable delay, lack of excuse, and material prejudice to the defendant.  *Advanced Cardiovascular Sys.,* 988 F.2d at 1161.  However, in the rare event "the elements of laches appear on the face of the complaint, the defendant may move for—and the court may grant—dismissal under Rule 12(b)(6)."  *Strauss v. Angie's List, Inc.,* No. 2:17-CV-02560-HLT-TJJ, 2019 WL 399910, at *3 (D.Kan. 2019).

4

[¶13] The district court held that the first element of laches was satisfied because Mr. Peterson inexcusably delayed filing his complaint. It determined "the earliest time" he could have asserted his claims was May 2020, after the Governor lifted the ban on gatherings of 10 or more people and Resolution 2020-24 expired on its own terms. The district court declared "there [was] no plausible excuse" for Mr. Peterson's delay of "more than two and one-half years" in filing his January 2023 complaint. This determination completely ignores that Mr. Peterson's claims relate to actions taken at different times by the City Council. Many of the City Council meetings addressed by the complaint occurred closer in time to January 2023. Mr. Peterson could not have alleged, in May 2020, that those meetings violated the Wyoming Public Meetings Act because they had not yet occurred.

[¶14] We explained in *Tram Tower Townhouse Ass'n,* ¶ 45, 509 P.3d at 367:

> "[T]here is no set length of delay that will be considered undue or inexcusable; the circumstances of each case must be considered in making that determination." Windsor, ¶ 25, 330 P.3d at 292 (citations omitted); *see also* Cathcart v. Meyer, 2004 WY 49, ¶ 13, 88 P.3d 1050, 1058 (Wyo. 2004) ("Laches does not depend on the passage of time alone; the plaintiff must be chargeable with lack of diligence in failing to proceed more promptly." (citation omitted)). To determine whether the [plaintiff]'s delay was undue or inexcusable, we must identify the earliest time the [plaintiff] could have brought its claim and then analyze whether the time that passed between then and when the [plaintiff] first asserted its claim was unreasonable. *See* 30A C.J.S. Equity § 151, Westlaw (Mar. 2022 Update).

"Laches may . . . be invoked only after the plaintiff discovers or with reasonable diligence could have discovered the facts giving rise to his or her cause of action[] and will not be invoked absent knowledge or notice of the wrong." 27A Am.Jur.2d *Equity* § 139 (2024). To suggest that all Mr. Peterson's claims accrued at the same time, in some cases years before the City Council took the actions he objected to, misreads and misinterprets his claims. Furthermore, the court's determination that there was "no plausible excuse" for his delay is not readily apparent from the face of his complaint. His complaint simply does not address the reasons, if any, for his delay in raising his objections to the City Council's separate actions from May 2020 through November 2022, or provide a basis for concluding, as a matter of law, his delay was unreasonable.

[¶15] The district court also determined the second element of laches was met because Mr. Peterson's requested relief of declaring the Council's May 2020 to November 2022

meetings illegal and every action taken in those meetings "null and void" would prejudice and injure the City Council and its "citizenry." In arriving at its decision, the district court took judicial notice of facts set forth in the City Clerk's affidavit showing

> the City Council ha[d] taken numerous actions since May 15, 2020[,] and . . . those actions d[id] not just involve the City Council. The numerous examples of action[s] taken by the City Council include[d] approving payments to vendors, renewing business licenses, and other actions affecting the citizenry of the City of Laramie in both their personal and business lives. The injury and prejudice that would result from a declaration that every meeting conducted between May 15, 2020[,] and November 16, 2022[,] [a]s illegal and undoing every decision of the City Council during that period is manifest and needs no further elaboration. The City Council, but more importantly those that have relied upon the actions of the City Council during the period at issue, would be significantly prejudiced and injured by a declaration undoing nearly three-year[s'] worth of decisions.

[¶16] We must first determine whether it was appropriate for the district court to consider facts stated in the City Clerk's affidavit attached to the City Council's motion to dismiss. When addressing a motion to dismiss under Rule 12(b)(6), the only materials the district court should consider are "the complaint and any incorporated attachments . . . ." *Bush Land Dev. Co.,* ¶ 7, 388 P.3d at 539 (citing *Irene v. Seneca Ins. Co.,* 2014 WY 145, 337 P.3d 483 (Wyo. 2014), and *Ridgerunner, LLC v. Meisinger,* 2013 WY 31, 297 P.3d 110 (Wyo. 2013)).

> If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.

W.R.C.P. 12(d). *See also, Sweetwater Station, LLC v. Pedri,* 2022 WY 163, ¶ 11, 522 P.3d 617, 622 (Wyo. 2022) ("Because the court considered materials outside the complaint in ruling on its motion to dismiss, it should have converted the motion to one for summary judgment.").

[¶17] The district court took into consideration two different types of information not attached to Mr. Peterson's complaint in deciding the City Council's motion to dismiss. First, it considered the City Council's resolutions we described above. Mr. Peterson referred to these resolutions in his complaint, but he did not attach hard copies of the

6

documents to his complaint; instead, he included internet hyper-links to them. We need not address whether providing an internet link qualifies as an attachment incorporated into a complaint which may be properly considered when ruling on a Rule 12(b)(6) motion because the City Council included hard copies of the same documents with its motion to dismiss. In ruling on a motion to dismiss, a court may "consider documents . . . referenced in the complaint if they 'are central to the plaintiff's claim and the parties do not dispute the documents' authenticity.'" *Brokers' Choice of Am., Inc. v. NBC Universal, Inc.,* 861 F.3d 1081, 1103 (10th Cir. 2017) (applying the similar Fed. R. Civ. P. 12(b)(6), and quoting *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002)) (other citation omitted). *See also, Gee v. Pacheco,* 627 F.3d 1178, 1186 (10th Cir. 2010) (in ruling on a motion to dismiss, the court may consider "documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity") (quotation marks and citations omitted). The resolutions referenced in Mr. Peterson's complaint were central to his claims and, given the City Council attached them to its motion to dismiss, there was no dispute as to their authenticity. Consequently, the district court properly considered them.

[¶18] The second type of information the district court considered was not referenced in Mr. Peterson's complaint. The court apparently took judicial notice of the City Clerk's affidavit, which recited her "personal knowledge of . . . actions taken by the City Council at [its] meetings" during the relevant time period, including a specific list of actions taken by the Council in August 2022 and hyperlinks to the general sections of the City of Laramie's website where the city ordinances and City Council's meeting minutes were posted                    http://www.cityoflaramie.org/Ordinances                    and http://www.cityoflaramie.org/agendacenter. The links were not to specific ordinances or meeting minutes, so anyone seeking the relevant documents would have to search for them. Because Mr. Peterson did not reference this information in his complaint, it does not qualify for consideration under the same principle as the resolutions.

[¶19] Instead of identifying specific meeting minutes or ordinances, the district court generally took judicial notice of the City Council's "numerous actions in furtherance of the business and governance of the City . . . during the period at issue" and "that those actions do not just involve the City Council." The district court cited a United States Supreme Court case discussing Fed. R. Civ. P. 12(b)(6) for authority that it was entitled to take judicial notice of the City Council's actions – *Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308, 127 S.Ct. 2499, 168 L.Ed.2d 179 (2007). There, the Supreme Court stated: "[C]ourts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on [Fed. R. Civ. P.] 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Id.,* 551 U.S. at 322, 127 S.Ct. at 2509 (citing 5B Wright & Miller § 1357 (3d ed. 2004 and Supp. 2007)). In the same vein, the Tenth Circuit stated in *Zimomra v. Alamo Rent-A-Car, Inc.,* 111 F.3d 1495, 1503-04 (10th Cir. 1997), that it was "entirely appropriate for the district court to take judicial notice" of a municipal

ordinance in ruling on a motion to dismiss. *See also, United States ex rel. Dingle v. BioPort Corp.,* 270 F.Supp.2d 968, 971-73 (W.D. Mich. 2003) (under Fed. R. Evid. 201, "public records and government documents are generally considered not to be subject to reasonable dispute" and can be considered in a Rule 12(b)(6) proceeding) (some quotation marks and citation omitted).

[¶20]  Wyoming has limited authority about the use of judicially noticed information in ruling on Rule 12 motions to dismiss.  We have recognized the use of judicially noticed facts when deciding a motion to dismiss based upon res judicata or collateral estoppel.  In *In re Paternity of JRW,* 814 P.2d 1256, 1259 (Wyo. 1991), we followed "'the modern trend'" that a defendant can raise res judicata or collateral estoppel through a motion to dismiss if "'the information necessary for decision is available to the court by judicial notice.'"  *Id.* (quoting *Texas West Oil & Gas Corp. v. First Interstate Bank of Casper,* 743 P.2d 857, 858 (1987), *reconfirmed,* 749 P.2d 278 (Wyo. 1988)).  The district court in *JRW* took judicial notice of a parentage ruling from an earlier divorce proceeding between the parties in concluding the father was barred from relitigating the issue of paternity in a later proceeding.  *Id.* at 1258-59, 1263-66.  More recently in *Bird v. Lampert,* 2019 WY 56, ¶ 9, 441 P.3d 850, 854-55 (Wyo. 2019), we affirmed the district court's dismissal of Mr. Bird's complaint based on res judicata and collateral estoppel after taking "judicial notice of prior proceedings between the parties."  *Id.  See also, BB v. RSR,* 2007 WY 4, ¶ 11, 149 P.3d 727, 732 (Wyo. 2007) (a judgment on the pleadings under W.R.C.P. 12(c) is appropriate if "'the undisputed facts appearing in the pleadings, supplemented by any facts of which the trial court may take judicial notice, establish that no relief can be granted'" (quoting *Johnson v. Griffin,* 922 P.2d 860, 861-62 (Wyo. 1996))).

[¶21]  This case, obviously, does not involve judicial notice of court records from a related proceeding.  It is, instead, more like *Sweetwater Station,* ¶ 10, 522 P.3d at 621-22, where the defendants, in their motion to dismiss, asked the district court to take judicial notice of a recorded plat, minutes from a Rock Springs City Council meeting, and a recorded amendment to subdivision covenants.  In response, the plaintiff asked the court to take judicial notice of minutes from a separate Rock Springs City Council meeting.  *Id.* Although the district court did not rule on either request for judicial notice, its order referenced information from the materials.  *Id.*  We noted that, "[b]ecause the court considered materials outside the complaint in ruling on its motion to dismiss, it should have converted the motion to one for summary judgment."  *Id.*, ¶ 11, 522 P.3d at 622 (citing W.R.C.P. 12(d)).

[¶22]  We need not establish a general rule in this case about the propriety of using judicially noticed facts when deciding a Rule 12(b)(6) motion to dismiss because the City Council and the district court failed to follow the proper procedure for taking judicial notice.  The City Council argued judicial notice of its actions during the disputed period was proper because the actions were not subject to reasonable dispute.  This argument references Wyoming Rule of Evidence (W.R.E.) 201(b), which states "[a] judicially

noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."

[¶23]   We emphasized in *Cockreham v. Wyo. Prod. Credit Ass'n,* 743 P.2d 869, 872 (Wyo. 1987), that it is important for a party requesting judicial notice of facts to give written notice to the court, so it is "clear what matters the . . . court ha[s] the opportunity to consider." *See also, Gaston v. Life Care Ctrs. of Am., Inc.,* 2021 WY 74, ¶ 11 n.1, 488 P.3d 929, 935 n.1 (Wyo. 2021) (recognizing the importance of identifying documents subject to judicial notice).  In addition, W.R.E. 201(e) provides that "[a] party is entitled upon timely request to an opportunity to be heard as to the propriety of taking judicial notice and the tenor of the matter noticed.  In the absence of prior notification, the request may be made after judicial notice has been taken."

[¶24]   W.R.E. 201 was not followed in this case.  Other than the actions taken by the City Council in August 2022 referenced in the City Clerk's affidavit, the City Council did not give written notice of the specific matters it wanted the court to judicially notice under W.R.E. 201, and the court did not perform a full analysis under Rule 201(b).  In fact, the only time the district court even alluded to the proper standard was in a footnote in its dismissal order.  Without citing W.R.E. 201, the district court simply declared "the fact . . . the City Council during the period at issue took numerous actions in furtherance of the business and governance of the City [is] . . . capable of accurate and ready determination and the Court takes judicial notice of these facts . . . ."  The record does not show that Mr. Peterson was given an opportunity to respond under W.R.E. 201(e) even though he specifically requested "clarification on motion procedure" in his response to the motion to dismiss.

[¶25]   By using judicial notice as a vehicle for considering evidence outside the complaint, the district court skirted the W.R.C.P. 12(d) requirement that, when matters outside the pleadings are considered by the court in deciding a motion to dismiss, the motion "must be treated as one for summary judgment under W.R.C.P. 56," and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion."  The court did not follow the W.R.E. 201 procedure for taking judicial notice, and it did not convert the Council's motion to one for summary judgment in order to allow Mr. Peterson to respond with evidence of his own.  Thus, the district court erred by considering City Council actions not referenced in Mr. Peterson's complaint when deciding whether the delay in bringing his claims was prejudicial to the City Council and others.

[¶26] Furthermore, the district court did not simply take judicial notice of the City Council's actions.  It also made a subjective factual determination that the prejudice to the City Council and its "citizenry" from Mr. Peterson's delay in bringing his action was "manifest" and "need[ed] no further elaboration."  In *Rodriguez-Aguirre,* 265 F.3d at 1200, 1207, the Tenth Circuit reversed the district court's dismissal of the plaintiffs' request for

return of seized property on the ground of laches because the court did not require the government to show material prejudice from the plaintiffs' delay in bringing their claim. The government argued it was "obvious" and "apparent" it was materially prejudiced by the plaintiffs' delay in bringing the claim. *Id.* at 1208. Specifically, it asserted the delay was prejudicial because "[m]emories fade, [the] forfeited property ha[d] been disposed of[,] and retrieval of the records [would] be unnecessarily difficult and potentially impossible in some instances if records ha[d] been destroyed." *Id.* The Tenth Circuit said the "conclusory allegation of prejudice [was] insufficient to establish material prejudice" to the government. *Id. See also, Malibu Media, LLC v. Cuddy,* No. 13-CV-02385-WYD-MEH, 2015 WL 1280783, at *6 (D.Colo. 2015) ("material prejudice is not shown by conclusory allegations or mere speculation"). Here, too, the court's non-specific, conclusory determination that the City Council and its citizenry would be prejudiced by Mr. Peterson's delay in bringing his action does not satisfy the second element of laches.

## CONCLUSION

[¶27] To determine if a claim is barred under the doctrine of laches, the court must conduct a fact-intensive inquiry, which is typically not subject to resolution on a motion to dismiss. The district court in this case improperly took judicial notice of the City Council's evidence. Because it considered matters outside the complaint, it should have converted the City Council's motion to dismiss to one for summary judgment and allowed Mr. Peterson to present evidence that laches did not apply. In any event, the district court erred by declaring Mr. Peterson inexcusably delayed in bringing his claims because they all accrued in May 2020, and by making the conclusory determination that the prejudice to the City Council from Mr. Peterson's delay in bringing his action was manifest.

[¶28] Reversed and remanded for proceedings consistent with this decision.