# IN THE SUPREME COURT, STATE OF WYOMING

## 2025 WY 6

**OCTOBER TERM, A.D. 2024**

**January 9, 2025**

NICHOLAS HULL,

Appellant
(Plaintiff),

v.

NORTH LINCOLN HOSPITAL
DISTRICT, dba STAR VALLEY
HEALTH; TODD HADERLIE, M.D.;
CHRISTIAN M. MORGAN, M.D.;
DENISE ALLRED, RN; MYKA
HILLSTEAD, RN; DEANNA STARCER,
RN; and ASHLEY THORNOCK, RN,

Appellees
(Defendants).

S-24-0094

*Appeal from the District Court of Lincoln County*
*The Honorable Joseph B. Bluemel, Judge*

*Representing Appellant:*
*Sean T. Olson and Allison R. Pritchard, Olson Law Firm LLC, Golden, Colorado.*

*Representing Appellee:*
*Meggan J. Hathaway and Andrew F. Sears, Sundahl, Powers, Kapp & Martin, LLC, Cheyenne, Wyoming.*

*Before FOX, C.J., and BOOMGAARDEN, GRAY, FENN, and JAROSH, JJ.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**FOX, Chief Justice.**

[¶1]   Nicholas Hull sued North Lincoln Hospital District, doing business as Star Valley Health, and individually named defendants for negligence in the death of his newborn son, Eli Hull. The district court granted Defendants' motion to dismiss on the ground that Mr. Hull's notice of governmental claim was untimely. Mr. Hull appeals, claiming the court should have equitably extended his time for submitting the notice of claim because Defendants fraudulently concealed facts related to Eli's cause of death. We affirm.

## ISSUES

[¶2]   The dispositive issues in this appeal are:

1. Did Mr. Hull's complaint adequately allege the elements of equitable estoppel so as to bar Defendants from asserting the untimeliness of his notice of governmental claim?

2. Did Mr. Hull's complaint adequately allege the elements of equitable tolling so as to toll the period for submitting his notice of governmental claim?

## FACTS

[¶3]   Canessa Hull went into labor August 9, 2021, and was admitted to Star Valley Health at around 10:00 a.m. Dr. Christian Morgan, the physician managing Ms. Hull's pregnancy, was out of town, so Ms. Hull was attended to by Dr. Todd Haderlie, a family medicine specialist.

[¶4]   Ms. Hull was in labor for over twenty-six hours, and throughout that time, the fetal heart rate monitor showed variable decelerations in Eli's heart rate. In the early morning hours of August 10, 2021, Dr. Spencer Burk, one of Star Valley Health's anesthesiologists, saw Ms. Hull to check on her epidural. During his examination, one of the nurses asked him to review Eli's fetal heart rate strip, which he did. Dr. Burk informed the nurse and other staff present that the strip indicated a cord problem and that an emergency cesarean should be performed. He told them the operating room would be ready and asked that Dr. Haderlie contact him and the anesthesia team when he was ready to perform the emergency delivery.

[¶5]   Dr. Haderlie did not contact Dr. Burk or anyone else in anesthesiology, and Ms. Hull's labor continued for several hours. During that time, Eli's fetal heart rate decelerations increased in severity and frequency, and approximately fifteen minutes

before his birth, his heart stopped beating altogether. Eli was born with a double-knotted nuchal cord, and with no spontaneous breathing or heart rate.

[¶6] Staff at Star Valley Health worked for approximately twenty minutes to resuscitate Eli, and once resuscitated, he was life-flighted to Eastern Idaho Regional Medical Center. Eli remained on life support for seven days before it was determined that his neurologic damage was too severe to be compatible with life. On August 17, 2021, doctors pulled Eli from life support, and he died.

[¶7] On August 11, 2021, Dr. Haderlie visited Ms. Hull in her hospital room and told her the only reason Eli was born lifeless was because of the double-knotted nuchal cord. On August 16, 2021, Ms. Hull saw Dr. Morgan for a post-birth follow-up appointment, and he likewise discussed the double-knotted nuchal cord as the reason for Eli's death. Dr. Haderlie again visited with Ms. Hull later that month and reiterated that the double-knotted nuchal cord caused Eli's death. He told her that an emergency c-section would not have changed the outcome, and he implied the procedure would have been too risky for both her and Eli.

[¶8] In late September 2021, Dr. Haderlie mailed the Hulls a copy of an email addressed to him from a person named Pam. In that email, "Pam" stated:

> I spoke with the independent maternal fetal medicine expert recently who reviewed this case on our behalf. He feels the care was appropriate but obviously with an unfortunate outcome. The fetal heart tracing looked good until right before baby was delivered. A change on the strip is often seen during labor with pushing and in this case the physician made the decision to deliver with vacuum assist. This too the expert felt was an appropriate decision because the practitioner oftentimes recognizes that they can likely deliver the baby faster than proceed to the OR for a c-section. At 11:45, mom was pushing and there were variables on the FHT. At 12:00, the monitor tracing is not picking up heartbeat. Baby was delivered at 12:10.

[¶9] The Hulls believed that Dr. Haderlie was honest with them about the reasons for and circumstances of Eli's death. As a result, they did not inquire further about Eli's death, and they did not commence legal action.

[¶10] Ms. Hull's next contact with anyone concerning Eli's death was on March 11, 2022, when she again saw Dr. Morgan. During that visit, Dr. Morgan told Ms. Hull that Dr. Haderlie had "performed thousands of deliveries with no problems, except Eli." He again attributed the sole cause of Eli's death to the nuchal cord issues.

[¶11] Over a year later, on April 30, 2023, the Hulls met with Dr. Burk, the anesthesiologist. Dr. Burk informed the Hulls of the monitoring of Eli's fetal heart rate on the morning of his birth, and that he was experiencing dangerous decelerations hours before his birth. He told the Hulls that safety protocols were not followed during Ms. Hull's labor and Eli's birth, that they had received incorrect information from Dr. Haderlie, and that Eli's death was entirely preventable.

[¶12] On July 28, 2023, Mr. Hull filed a petition for appointment of wrongful death representative. On July 31, 2023, pursuant to Wyo. Stat. Ann. § 1-39-113 (2023), counsel for the Hulls submitted a notice of claim to the Lincoln County Clerk, detailing the Hulls' claims of negligence against Star Valley Health and the individually named defendants. On August 9, 2023, the district court appointed Mr. Hull as Eli's wrongful death representative, and on August 28, 2023, Mr. Hull filed a wrongful death action against North Lincoln Hospital District and the individually named defendants.

[¶13] On October 12, 2023, Mr. Hull filed an amended complaint, followed by a second amended complaint on October 31, 2023. The second amended complaint alleged that Defendants had fraudulently concealed the facts surrounding Eli's death, and as a result, the two-year period for filing a notice governmental claim did not begin to run until April 30, 2023, when Dr. Burk informed the Hulls of the fraudulent concealment. Concerning the notice of governmental claim, the second amended complaint alleged:

> 18. Notice, pursuant to Wyo. Stat. § 1-39-113, was sent, via electronic mail to the County Clerk of Lincoln County on July 29, 2023, and via certified mail on July 31, 2023.
>
> 19. Amended notice, pursuant to Wyo. Stat. § 1-39-113, was sent via electronic mail to the County Clerk of Lincoln County and Defense Counsel on October 12, 2023, and via certified mail on October 12, 2023.
>
> 20. Notice, pursuant to Wyo. Stat. § 1-39-113, was sent via certified mail to North Lincoln County Hospital District d/b/a Star Valley Health and Daniel Ordyna, CEO, on October 18, 2023, and was received by Star Valley Health on October 23, 2023.
>
> 21. The amended notice sent to the County Clerk and the notice sent to North Lincoln County Hospital District d/b/a Star Valley Health complied with the signature and certification requirements of Article 16, Section 7 of the Wyoming Constitution.

3

[¶14] On November 8, 2023, Defendants moved to dismiss Mr. Hull's complaint for failure to state a claim pursuant to W.R.C.P. 12(b)(6). They asserted the two-year period for presenting a governmental claim pursuant to Wyo. Stat. Ann. § 1-39-113 expired on September 21, 2023, or at the latest on September 28, 2023. They contended Mr. Hull failed to meet this deadline as the notice of claim he submitted on July 31, 2023 was defective because it was not certified as required by Wyo. Stat. Ann. § 1-39-113(d)(iii) and the Wyoming Constitution, and because it was sent to the county clerk instead of the business office of the hospital district, as required by Wyo. Stat. Ann. § 1-39-113(c). Defendants argued that although the October 2023 notices of claim cured these deficiencies, they were untimely.

[¶15] Mr. Hull responded that Defendants fraudulently concealed the facts surrounding Eli's death and the period for filing his notice of claim was equitably tolled until that fraud was discovered. He thus argued that the two-year deadline for presenting his governmental claim did not begin to run until April 30, 2023, and his corrected notice of claim filed in October 2023 was timely.

[¶16] The district court granted Defendants' motion to dismiss. It concluded that because Mr. Hull discovered his claim within the two-year period for filing his notice of claim, the Wyoming Governmental Claims Act (WGCA) required that he file the notice of claim during that two-year period. The court further concluded that Mr. Hull was not entitled to have the claims period equitably tolled because Defendants disclosed the cause of Eli's death, a double-knotted nuchal cord, and thus did not fraudulently conceal facts necessary to give notice of a claim under the WGCA.

[¶17] Mr. Hull filed a motion to alter or amend the district court's order pursuant to W.R.C.P. 59(e). He argued the court erred in failing to accept as true the allegations in the complaint that Eli's death was caused not by the nuchal cord but by Defendants' failure to intervene earlier in response to the evidence of fetal distress. He further argued that the court misapplied the equitable doctrines and that its interpretation of the WGCA violated constitutional principles of equal protection.

[¶18] The district court denied Mr. Hull's Rule 59(e) motion, and Mr. Hull timely appealed to this Court.

### STANDARD OF REVIEW

[¶19] The district court dismissed Mr. Hull's complaint for failure to state a claim pursuant to W.R.C.P. 12(b)(6). We review Rule 12(b)(6) dismissals de novo. *Peterson v. Laramie City Council*, 2024 WY 23, ¶ 9, 543 P.3d 922, 926 (Wyo. 2024). "We examine the same materials and apply the same standards as the district court, accepting the facts alleged in the complaint as true and viewing them in the light most favorable to the non-

4

moving party." *Williams v. Lundvall*, 2024 WY 27A, ¶ 6, 545 P.3d 431, 433 (Wyo. 2024). "Dismissal is appropriate only if it is certain on the face of the complaint that the plaintiff cannot assert any facts that create entitlement to relief." *Id*. Additionally, we may affirm a district court decision on any basis supported by the record. *Winney v. Jerup*, 2023 WY 113, ¶ 30, 539 P.3d 77, 86 (Wyo. 2023).

## DISCUSSION

[¶20] Equitable estoppel and equitable tolling are different doctrines. *Sweetalla v. State ex rel. Dep't of Workforce Servs., Workers' Comp. Div.*, 2019 WY 91, ¶ 37 n.8, 448 P.3d 825, 834 n.8 (Wyo. 2019). "Equitable estoppel 'bars' a party or parties from asserting the statute of limitations as a defense; equitable tolling 'interrupts' the limitations period." *Id*. (quoting 51 Am. Jur. 2d *Limitation of Actions* § 373 (Aug. 2019 Update); 51 Am. Jur. 2d Limitation of Actions § 157 (Aug. 2019 Update)). We will therefore separately address Mr. Hull's claims under each doctrine, after first addressing some preliminary matters.

## I.     *Preliminary Matters*

**A.     In considering Mr. Hull's claim that estoppel either barred Defendants from asserting a statute of limitations defense or tolled the limitations period, this Court accepts as true that Defendants fraudulently concealed the cause of Eli's death.**

[¶21] Mr. Hull contends that the district court erred in rejecting his estoppel claims based on its finding that Defendants did not fraudulently conceal the cause of Eli's death. We agree.

[¶22] Mr. Hull's complaint alleged that Eli's double-knotted nuchal cord would not have been fatal had Defendants intervened earlier in response to signs of fetal distress. His complaint further alleged that Defendants withheld information concerning the early signs of fetal distress to prevent the Hulls from having the knowledge necessary to file a claim. In testing the sufficiency of Mr. Hull's estoppel claims, the district court did not accept these allegations as true and instead found that the double-knotted nuchal cord was the cause of Eli's death. The court further found that because Defendants disclosed this cause of death, there was no basis for Mr. Hull's estoppel claims.

[¶23] In considering Defendants' Rule 12(b)(6) motion to dismiss, the district court was required to accept Mr. Hull's allegations as true. *Williams*, 2024 WY 27A, ¶ 6, 545 P.3d at 433. Its findings to the contrary were not a basis to reject Mr. Hull's estoppel claims, and the court erred in so ruling. As we proceed with the claims on appeal, we assume as true that Defendants fraudulently concealed the true cause of Eli's death.

5

**B.      It is undisputed that if neither equitable estoppel nor equitable tolling applies, Mr. Hull did not file a WGCA-compliant notice of claim within two years of the date of the alleged act, error or omission.**

[¶24] Pursuant to the WGCA, no claim may be maintained against a governmental entity unless a written notice of claim is submitted to the entity within two years of the alleged act, error or omission. Wyo. Stat. Ann. § 1-39-113(a).[1] Defendants assert that two years from the date of the alleged act, error or omission, taking into consideration the tolling required for the appointment of Mr. Hull as Eli's wrongful death representative, ran on September 21, 2023 (measured from Eli's delivery), or September 28, 2023 (measured from Eli's death). Mr. Hull does not dispute this calculation or that the notice of claim he filed before the September dates was defective in that it did not contain the required certification and was sent to the wrong location.[2] He instead contends that under equitable principles, the two-year deadline for submitting his notice of claim ran from April 30, 2023, and the district court erred in concluding otherwise.

[¶25] Because it is not in dispute, we will not detail the calculation of the September 2023 notice of claim deadline. We likewise will not further discuss the defects in the July 30, 2023, notice of claim. We instead proceed with the understanding that unless equitable principles operate to extend the September 2023 notice of claim deadline, Mr. Hull's July 30 notice of claim was untimely.

**C.      We assume without deciding that equitable estoppel and equitable tolling can apply under the WGCA.**

[¶26] The district court concluded that equitable tolling could not apply under the WGCA because Mr. Hull discovered his claim within the two-year period following the

---

[1] The WGCA contains its own discovery provision that allows a claim to be brought outside the two-year period where the act, error or omission was "[n]ot reasonably discoverable within a two (2) year period[,]" or "[t]he claimant failed to discover the alleged act, error or omission within the two (2) year period despite the exercise of due diligence." Wyo. Stat. Ann. § 1-39-113(a)(i)-(ii). That provision is inapplicable to the facts, as the Hulls discovered the act, error or omission within the two-year period.

[2] The WGCA requires that any claim presented to a government entity be signed by the claimant certifying under penalty of false swearing that the claim is true and accurate, and it prescribes the form for that signature. Wyo. Stat. Ann. § 1-39-113(e). This certification requirement stems from Article 16, section 7 of the Wyoming Constitution. *See* Wyo. Stat. Ann. § 1-39-113(d). The WGCA further requires that a claim against a special district, like North Lincoln County Hospital District, be submitted to the secretary of the special district. Mr. Hull did not sign the notice of claim that was submitted on July 30, 2023, and it did not contain the required certification; only his counsel signed the claim. Additionally, it was sent to the Lincoln County Clerk, not the secretary of the hospital district. The notice of claim was therefore defective and could not serve as a timely submission. *See Harmon v. Star Valley Med. Ctr.*, 2014 WY 90, ¶¶ 49, 51, 331 P.3d 1174, 1188 (Wyo. 2014) (strict compliance with the WGCA notice of claim requirements is a condition precedent to suit against a governmental entity).

6

alleged act, error or omission and the WGCA by its terms precludes tolling under those circumstances. As we discuss below, we conclude that Mr. Hull's complaint failed to allege the elements required for application of either equitable estoppel or equitable tolling to relieve the bar of the WGCA claims deadline. In reaching that conclusion, we assume without deciding that these equitable principles can apply under the WGCA, saving that question for another day. *See Archuleta v. City of Rawlins*, 942 P.2d 404, 406 (Wyo. 1997) (addressing only whether facts of case established basis for equitable estoppel without addressing whether equitable estoppel could apply under WGCA).

## II.    Mr. Hull's complaint failed to allege the elements of equitable estoppel.

[¶27] "[E]quitable estoppel 'bars a defendant from pleading the running of a statute of limitations.'" *Sweetalla*, 2019 WY 91, ¶ 23, 448 P.3d at 831 (quoting 51 Am. Jur. 2d *Limitation of Actions* § 373 (Aug. 2019 Update)). One circumstance under which the doctrine applies is "where the defendant has superior knowledge of the facts necessary to make out a cause of action and fraudulently conceals those facts or misrepresents them to the detriment of the plaintiff[.]" *Archuleta*, 942 P.2d at 406 (quoting *Olson v. A.H. Robins Co., Inc.*, 696 P.2d 1294, 1299 (Wyo. 1985)); *see also In re Estate of Graves*, 2011 WY 165, ¶ 14, 267 P.3d 1070, 1074 (Wyo. 2011) (recognizing a defendant's fraud as a basis to bar assertion of a limitations defense).

[¶28] A plaintiff asserting equitable estoppel must establish three elements: the delay in filing the action was induced by the defendant; the defendant misled the plaintiff; and the plaintiff "acted on the misinformation in good faith to the extent that he failed to pursue his action in a timely manner." *Graves*, 2011 WY 165, ¶ 14, 267 P.3d at 1074 (citing *Turner v. Turner*, 582 P.2d 600, 602 (Wyo. 1978)); *see also Inman v. Boykin*, 2014 WY 94, ¶ 25, 330 P.3d 275, 283 (Wyo. 2014).[3] The equitable estoppel bar "does not last

---

[3] Defendants contend that a plaintiff carries a higher burden when asserting equitable estoppel against a government entity and must establish that the entity or its employee engaged in authorized affirmative misconduct. In so arguing, they cite *Knori v. State ex rel. Dep't of Health, Office of Medicaid*, 2005 WY 48, ¶ 11, 109 P.3d 905, 909 (Wyo. 2005). *Knori*, however, did not concern the application of equitable estoppel against a government entity to bar a statute of limitations defense. It instead considered whether equitable estoppel could bind the Department of Health to an employee's erroneous and unauthorized statement to a Medicaid applicant concerning exemption of the applicant's home from any future estate recovery for benefits paid. *Id.*, 2005 WY 48, ¶ 2, 109 P.3d at 907. Concerning statutes of limitations, on the other hand, "[w]e have recognized that estoppel is available against a governmental agency for the unintentional, misleading statement of its representative." *Picozzi v. State ex rel. Wyo. Workers' Safety & Comp. Div.*, 2013 WY 86, ¶ 12, 304 P.3d 977, 981 (Wyo. 2013) (quoting *Appleby v. State ex rel. Wyo. Workers' Safety & Comp. Div.*, 2002 WY 84, ¶ 19, 47 P.3d 613, 619 (Wyo. 2002)); *compare Montana-Dakota Util., Co. v. Wyo. Pub. Serv. Comm'n*, 2014 WY 106, ¶ 30, 332 P.3d 1160, 1168 (Wyo. 2014) (applying higher standard to allegation PSC was estopped from ordering utility to issue refund where PSC had previously approved rates). We thus reject Defendants' contention that Mr. Hull had to allege authorized affirmative misconduct.

forever." *Sweetalla*, 2019 WY 91, ¶ 24, 448 P.3d at 831 (quoting *Ferro v. Soc'y of Saint Pius X*, 149 P.3d 813, 815 (Idaho 2006)). A "plaintiff must act within a reasonable time after discovering that the promises relied on were false." *Sweetalla*, 2019 WY 91, ¶ 24, 448 P.3d at 831 (quoting *Peterson v. Groves*, 44 P.3d 894, 898 (Wash. Ct. App. 2002)).

> The general rule appears to be that a plaintiff may not invoke the doctrine of equitable estoppel against a defendant unless the plaintiff exercises due diligence in commencing the appropriate legal proceeding after the circumstances giving rise to estoppel have ceased to be operational, that is, after plaintiff has notice, actual or constructive, that he must resort to legal recourse and may no longer rely upon agreements, promises, representations to the contrary, or conduct or deceptive practices which may have lulled him into a sense of security.

*Sweetalla*, 2019 WY 91, ¶ 24, 448 P.3d at 831 (quoting Allan E. Korpela, LL.B., Annotation, *Plaintiff's diligence as affecting his right to have defendant estopped from pleading the statute of limitations*, 44 A.L.R.3d 760 § 2[a] (Originally published in 1972)).

[¶29] Given this framework, Mr. Hull's complaint is lacking in two respects. First, over four months remained under the WGCA limitations period when Mr. Hull discovered Defendants' fraudulent concealment. While Mr. Hull's complaint alleged that it took several requests over those months to finally obtain from Defendants all information the Hulls sought related to Eli's death, the complaint contained no allegation that the four-plus months did not provide him a reasonable time within which to submit his notice of claim. In fact, the complaint alleged that Mr. Hull was able to submit a claim on July 31, 2023, before the limitations period ran.

[¶30] Additionally, and relatedly, Mr. Hull's complaint did not allege that Defendants' fraudulent concealment of Eli's cause of death caused Mr. Hull to submit an untimely or defective notice of claim. Although it took several requests over the four-month period to finally obtain the fetal heart rate strips, Mr. Hull was able to and did file his notice of claim before receiving the strips. The complaint thus failed to allege the required causal element that Mr. Hull "acted on the misinformation in good faith to the extent that he failed to pursue his action in a timely manner." *Graves*, 2011 WY 165, ¶ 14, 267 P.3d at 1074; *see also Muller v. Thaut*, 430 N.W.2d 884, 889 (Neb. 1988) ("[I]f a plaintiff has ample time to institute his action, after the inducement for delay has ceased to operate, he cannot excuse his failure to act within the statutory time on the ground of estoppel.") (quoting *Luther v. Sohl*, 181 N.W.2d 268, 270 (Neb. 1970)).

[¶31] Although Mr. Hull's complaint made troubling allegations that Defendants misled the Hulls, it did not allege the other elements of equitable estoppel. Equitable estoppel therefore did not bar Defendants' statute of limitations defense.

### III.    Mr. Hull's complaint failed to allege the elements of equitable tolling.

[¶32] "Equitable tolling 'extends statutory deadlines in extraordinary circumstances for parties who have been prevented from complying with them through no fault or lack of diligence of their own.'" *Comacho v. State ex rel. Dep't of Workforce Servs., Workers' Comp. Div.*, 2019 WY 92, ¶ 19, 448 P.3d 834, 841 (Wyo. 2019) (quoting 51 Am. Jur. 2d *Limitation of Actions* § 153 (Aug. 2019 Update)). "Any equitable circumstances preventing a party from complying with statutory deadlines 'must be truly beyond the control of the plaintiff.'" *Comacho,* 2019 WY 92, ¶ 19, 448 P.3d at 841.

[¶33] Mr. Hull contends that because Defendants fraudulently concealed the cause of Eli's death, the Hulls, through no fault of their own, could not have known the true cause of Eli's death until April 30, 2023, and the WGCA's two-year period of limitations did not begin to run until that date. This argument misapprehends the breadth of the tolling doctrine.[4]

[¶34] As *Comacho* indicates, the extraordinary circumstance that warrants application of equitable tolling must have prevented Mr. Hull from complying with the WGCA notice of claim deadline. *See also Fedance v. Harris*, 1 F.4th 1278, 1284 (11th Cir. 2021) (extraordinary circumstance must prevent timely action); *Harper*, 648 F.3d at 137 ("To secure equitable tolling, it is not enough for a party to show that he experienced extraordinary circumstances. He must further demonstrate that those circumstances caused him to miss the original filing deadline.").

> "The word 'prevent' requires the petitioner to demonstrate a causal relationship between the extraordinary circumstances on which the claim for equitable tolling rests and the lateness of his filing, a demonstration that cannot be made if the

---

[4] Mr. Hull's argument presumes that the WGCA notice-of-claim clock stopped upon Defendants' fraudulent concealment and started again on April 30, 2023, with the entire two-year period remaining. There are jurisdictions that take that approach. *See*, *e.g.*, *Harper v. Ercole*, 648 F.3d 132, 139 (2d Cir. 2011) (quoting *United States v. Ibarra*, 502 U.S. 1, 4 n. 2, 112 S.Ct. 4, 116 L.Ed.2d 1 (1991)). Under the common law, however, fraud will toll a statute of limitations until the plaintiff discovers the wrong, and then the plaintiff has a reasonable amount of time to bring the claim. *Alldredge v. Good Samaritan Home, Inc.*, 9 N.E.3d 1257, 1261 (Ind. 2014). Because we conclude that Mr. Hull's complaint failed to allege the requirements for application of equitable tolling, we need not decide which approach this Court would adopt in a case where equitable tolling does apply.

> petitioner, acting with reasonable diligence, could have filed
> on time notwithstanding the extraordinary circumstances."

*Ross v. Varano*, 712 F.3d 784, 803 n.29 (3d Cir. 2013) (quoting *Valverde v. Stinson*, 224 F.3d 129, 134 (2d Cir. 2000)).

[¶35] Mr. Hull's complaint alleged an extraordinary circumstance in Defendants' fraudulent concealment of Eli's cause of death. It did not, however, allege that he could not have, with the exercise of reasonable diligence, submitted a notice of claim within the four-plus months remaining under the WGCA deadline when that extraordinary circumstance ended. *See Matter of Estate of French*, 956 N.W.2d 806, 812 (S.D. 2021) (rejecting equitable tolling where plaintiff had retained counsel over six months before statute of limitations ran). As we observed in our discussion of equitable estoppel, the allegation was to the contrary, that Mr. Hull did file a notice of claim within that period. And, as we also observed in our discussion of equitable estoppel, Mr. Hull's complaint did not allege that Defendants' fraudulent concealment caused him to file a defective notice of claim within the required period.

[¶36] Because Mr. Hull's complaint did not allege the required causal nexus between Defendants' fraudulent concealment and his failure to timely file his notice of claim under the WGCA, equitable tolling does not apply.

[¶37] Affirmed.

10