2007 WY 171

Rod FOX, d/b/a Fibertection Corporation, a Fox Company, Appellant (Plaintiff/Counter–Defendant),

v.

WHEELER ELECTRIC, INC., a Corporate Entity, Appellee (Defendant/Counter–Claimant).

No. S–07–0058.

Supreme Court of Wyoming.

Oct. 31, 2007.

Representing Appellant: Kenneth S. Cohen, Cohen Law Office, PC, Jackson, Wyoming.

Representing Appellee: Michael Dean Gaffney, Beard, St. Clair, Gaffney, PA, Idaho Falls, Idaho.

Before VOIGT, C.J., and GOLDEN, HILL, KITE, and BURKE, JJ.

BURKE, Justice.

[¶ 1] This is an appeal from the trial court's judgment that Rod Fox and Fibertection Corporation breached a contract with Wheeler Electric, Inc., to supply fire alarm equipment. We affirm.

## ISSUES

[¶ 2] Appellant raises four issues for our consideration. To facilitate discussion, we place them in this order:

1. Did the district court err in concluding that the parties' contract required equipment from one particular manufacturer when the contract specifications provided that other manufacturers' equipment would be accepted and the equipment was conforming?

2. Did the district court err in imposing procedural requirements contained in a Request for Proposal when the district court did not find the RFP to be part of the parties' agreement?

3. Did the district court err in excluding the Customer Application and Agreement for Credit as part of the parties' contract merely on the basis that it was remote in time, when the parties' credit relationship was ongoing and had not expired?

4. Did the district court err in not applying Article 2 of the Uniform Commercial Code to the parties' contract for supplying, testing, and certifying fire alarm equipment?

## FACTS

[¶ 3] The basic facts in this case are not disputed. Rod Fox is the president and owner of Fibertection Corporation, a Wyoming corporation that supplies fire alarm, security, and communications equipment and support services. Wheeler Electric, Inc., an Idaho corporation, is a family-owned electrical contractor. The two companies worked together on a number of projects over the years, and enjoyed a good business relationship until this dispute arose.

[¶ 4] In 2004, Bechtel BWXT Idaho, LLC, was the operating contractor for the United States Department of Energy's Idaho National Energy and Environmental Laboratory. Bechtel sent Wheeler, among other potential sub-contractors, a Request for Proposal (RFP) for a project to upgrade the laboratory's fire monitoring systems. Wheeler, in turn, asked Fibertection to submit a proposal to supply fire alarm equipment for the project. Wheeler gave Fibertection a copy of the Construction Specifications for the project, which indicated that the equipment supplied should be made by a manufacturer known as Digitize.

[¶ 5] Fibertection submitted a bid to Wheeler, "in conformance with the plans and specifications," to provide the equipment at a price of $289,974. Fibertection also proposed an alternative bid of $226,490 to provide similar equipment from a maker known as Radionics. Fibertection's bids were significantly below its competitor's, and Wheeler used Fibertection's bid to prepare its proposal to Bechtel. Wheeler passed on Fibertection's proposal to use Radionics equipment, but Bechtel rejected the proposal, indicating that it preferred the Digitize equipment. After Bechtel awarded the contract to Wheeler, Wheeler issued a purchase order to Fibertection.

[¶ 6] When Fibertection tried to order the Digitize equipment, however, it learned that its distributor was prohibited by Digitize from supplying equipment for a project in Idaho. The only authorized Idaho distributor was Fibertection's competitor, the one that had submitted the substantially higher bid to Wheeler. Unable to obtain the Digitize equipment, Fibertection instead ordered equipment from another manufacturer, Keltron. When Fibertection later told Wheeler that it would be supplying Keltron equipment for the project, it asserted that the Keltron equipment was in full compliance with the plans and specifications, and was equal to or better than the Digitize equipment. Fibertection provided documentation to that effect to Wheeler, who passed it on to Bechtel with a request that Bechtel approve the use of Keltron equipment. However, Bechtel told Wheeler there was not enough time to review the Keltron information without compromising the project schedule, and again indicated that it would require the Digitize equipment as listed in the Construction Specifications.

[¶ 7] After Bechtel rejected the Keltron equipment, Wheeler told Fibertection that it would have to provide the required Digitize equipment, or else Wheeler would have to obtain it from another source. Fibertection confirmed that it would not provide the Digi-

tize equipment. Wheeler therefore obtained it from Fibertection's competitor, at a price substantially higher than Fibertection's bid.

[¶ 8] Fibertection contended that its contract with Wheeler allowed it to provide either Digitize equipment or equipment from another manufacturer if it met the technical requirements for the project. Wheeler contended otherwise, leading to this' litigation. The trial court agreed with Wheeler, and ruled that Fibertection had breached the contract by failing to provide Digitize equipment. As damages, it awarded Wheeler the difference between Fibertection's bid price and the higher price Wheeler paid the competitor for the Digitize equipment. Fibertection appeals from that judgment.

## STANDARD OF REVIEW

[¶ 9] Following a bench trial, we review the trial court's findings of fact for clear error, and its conclusions of law *de novo*. *Pinther v. Ditzel*, 2007 WY 116, ¶ 3, 163 P.3d 816, 816 (Wyo.2007). Fibertection does not dispute the trial court's findings of fact, but takes issue with its application of legal standards to those facts. Accordingly, in reviewing these questions of law, we afford no deference to the legal conclusions of the trial court. *Jacoby v. Jacoby*, 2004 WY 140, ¶ 7, 100 P.3d 852, 855 (Wyo.2004).

## DISCUSSION

[¶ 10] A trial court follows a familiar path when interpreting or construing a contract. The primary focus is on determining the intent of the parties to the contract. The initial question is whether the language of the contract is clear and unambiguous. If it is, then the trial court determines the parties' intent from the contract language alone. It does not consider extrinsic evidence, although it may consider the context in which the contract was written, including the subject matter, the purpose of the contract, and the circumstances surrounding its making, all to help ascertain what the parties intended when they made the contract. The trial court then enforces the contract in accordance with the plain meaning its language would be given by a reasonable person. All of these issues—deciding whether a contract

is unambiguous, determining the parties' intent from the unambiguous language, and enforcing the contract in accordance with its plain meaning—involve questions of law for the trial court. When we undertake *de novo* review of the trial court's conclusions of law, we follow the same familiar path. *See Double Eagle Petroleum & Mining Corp. v. Questar Exploration & Production Co.*, 2003 WY 139, ¶¶ 7–8, 78 P.3d 679, 681–82 (Wyo. 2003), *and cases cited therein.*

### 1. Digitize Equipment

[¶ 11] The trial court ruled that the contract between Fibertection and Wheeler was made up of three separate documents: (1) the Construction Specifications from Bechtel; (2) the bid that Fibertection submitted to Wheeler; and (3) the purchase order that Wheeler issued to Fibertection. The parties do not dispute this, and the record contains ample evidence that the parties intended to include these documents as components of their contract.

[¶ 12] Fibertection does dispute the trial court's conclusion that the contract required Fibertection to supply Digitize equipment. While Fibertection acknowledges that it was obligated to supply equipment that conformed to the Construction Specifications, it asserts that it could select any manufacturer whose equipment met the technical requirements of the Specifications. However, our review confirms that the trial court's conclusion accurately reflects the reasonable and plain meaning of the contract language.

[¶ 13] The bid that Fibertection submitted to Wheeler stated that it was "in conformance with the plans and specifications for all equipment." The first page of the referenced Construction Specifications stated that the scope of work for the project includes "[f]urnishing, installation, termination, and testing of ... [t]wo Digitize 3505 control panels" in one location, "a Digitize 3505 control panel ... using the Digitize CAPS II software system language" in another location, and a "Digitize CGRMS front end computer." It also required "[p]rogramming of all of the input points from the various DACTs into the Digitize DDI-9E DACR."

The Specifications also contained these further provisions about the equipment to be supplied:

*Approved Equal:* Whenever a product is specified by using a proprietary name, the name of a manufacturer, or vendor, the specific item mentioned shall be understood as establishing type, function, dimension, and quality desired. Other manufacturer's products will be accepted [by Bechtel], provided sufficient information is submitted by [Wheeler to Bechtel] to demonstrate that products proposed are equivalent to those named.

. . .

*Or Equal Material or Equipment Submittals:* All "or equal" materials, equipment or systems shall be identified and submitted for approval as required by the Subcontractor Requirements Manual.

When an "equal" item is proposed, data shall be submitted to [Bechtel] by [Wheeler] in such detail that clearly illustrate that the item, including components and fabrication thereof, or that adjustment of features to make the item "equal", meets requirements of the subcontract drawings and specifications. An "or equal" submittal shall contain as a minimum all operating and physical parameters necessary to show that the material or equipment is equivalent to the specified material or equipment. All parameters shall be specifically identified by [Wheeler] in the proposal. Exceptions or differences between the specified item and the "or equal" item shall also be identified. [Wheeler] shall submit data for "equal" approval and obtain [Bechtel]'s approval before committing to purchase the proposed "equal" item.

[¶ 14] Representatives of Wheeler testified that they understood these provisions as requiring Fibertection to supply Digitize equipment unless Bechtel approved a different manufacturer. Bechtel did not approve any other manufacturer, and specifically rejected Radionics and Keltron equipment. Accordingly, Wheeler was required to supply Digitize equipment to Bechtel, and in turn, believed that Fibertection was required to supply Digitize equipment to Wheeler.

[¶ 15] On behalf of Fibertection, Mr. Fox testified that he had initially intended to provide Digitize equipment because it was "desired," as stated in the first paragraph of the Specifications quoted above. Mr. Fox asserted that "desired" did not equal "required." This focus on the single word "desired" is too narrow. The word must be considered in the context of the contract as a whole. *Polo Ranch Co. v. City of Cheyenne,* 969 P.2d 132, 136 (Wyo.1998). The contract provisions quoted above plainly provided that equipment from a manufacturer other than Digitize was subject to Bechtel's approval. If it did not approve of alternative equipment, then Digitize equipment was required. In this context, the word "desired" expresses not merely a preference, but a requirement. Moreover, the language made it plain that the choice to approve or reject any other equipment belonged to Bechtel. There is nothing in the contract language suggesting that Fibertection was entitled to make a unilateral decision to substitute Keltron equipment for the listed Digitize equipment. Giving the contract language its reasonable and plain meaning, we agree with the trial court's conclusion that the contract obligated Fibertection to supply Digitize equipment.

**2. Requirements from the Request for Proposal**

[¶ 16] The RFP that Bechtel gave to Wheeler did not become part of the contract between Fibertection and Wheeler. Neither party asserts that the RFP was meant to be incorporated into their agreement. Fibertection contends, however, that the trial court erred by imposing some of the procedural requirements of the RFP on Fibertection, even though the RFP was not part of their contract.

[¶ 17] The specific RFP language that Fibertection quotes is that, "[u]nless the Offeror clearly indicates in the proposal that it is offering an 'equal' product, the proposal shall be considered as offering the brand name product(s) referenced in the solicitation." All parties agree that the RFP, through this and other language, required Wheeler to submit a proposal to substitute another brand of equipment at the time it submitted its pro-

posal to Bechtel. Fibertection asserts that it was not subject to this same requirement. However, Fibertection overlooks language from the Construction Specifications, quoted above, also requiring that information on alternative equipment "shall be specifically identified by [Wheeler] *in the proposal.*" (Emphasis added.) It is undisputed that the Construction Specifications were part of the contract between Fibertection and Wheeler, and it was language from the Construction Specifications, not provisions of the RFP, that the trial court enforced against Fibertection.

[¶ 18] Fibertection's suggestion that it was not subject to the Specifications' requirement to submit information on alternative equipment "in the proposal" because it was submitting a bid rather than a proposal is wholly unconvincing. Fibertection did not establish any meaningful distinction between a proposal and a bid. Moreover, the fact that Fibertection, in its bid, proposed Radionics equipment as an alternative strongly suggests that Fibertection knew that a proposal for alternative equipment had to be submitted at the beginning. Again, we uphold the trial court's conclusion.

[¶ 19] After considering Fibertection's contentions, reviewing the record, and analyzing the trial court's conclusions, we agree with the trial court's reasoning, and uphold its conclusions that:

> It was not until after the contract had been formed that Fibertection requested approval for Keltron equipment in violation of the express terms of the specifications requiring that such a request be made at the time of the proposal. The contract specifies Digitize equipment. Fibertection acknowledged that its bid was submitted based on Digitize equipment. The parties did not agree to Keltron equipment or any other "or equal" equipment when the contract was entered.... Fibertection's refusal to provide Digitize equipment constitutes [breach of the contract].

### 3. Customer Application and Agreement for Credit

[¶ 20] Four years before entering into the contract at issue here, Fibertection and Wheeler executed a Customer Application and Agreement for Credit. The trial court held that this Agreement was not part of the contract between Fibertection and Wheeler because it was too remote in time. Fibertection asserts that this was in error because the Agreement, though predating the contract by several years, was still in effect. We need not decide if the trial court ruled correctly, however, because the Agreement contains no provisions with any impact on the issues raised by Fibertection in this appeal.

[¶ 21] Although Fibertection does not mention this in its appeal brief, at trial it pointed to a provision of the Agreement stating that Fibertection was not subject to any "flow-down" terms or conditions, by which Fibertection meant that the terms or conditions of the contract between Wheeler and Bechtel would not "flow-down" and become binding on Fibertection. Specifically, it claims that Bechtel's approval or disapproval of Wheeler's request to substitute parts should not "flow-down" and affect Fibertection's obligation to Wheeler. As discussed previously, however, the trial court was not imposing on Fibertection any terms or conditions from the contract between Wheeler and Bechtel. Rather, it was enforcing the express terms and conditions of Fibertection's contract with Wheeler. Even if we were to interpret the "flow-down" provision of the Agreement as Fibertection suggests, it would make no difference in our decision.

[¶ 22] The only other part of the Agreement with potential relevance is one that might allow Fibertection to recover attorney's fees. Because Fibertection is not the successful party in this case, that provision is also irrelevant. There is no reason for us to determine whether or not the Agreement was a part of the contract.

### 4. Uniform Commercial Code

[¶ 23] Fibertection also cites Article 2 of the Uniform Commercial Code for the proposition that "[g]oods or conduct including any part of a performance are 'conforming' or conform to the contract when they are in accordance with the obligations under the contract." Wyo. Stat. Ann. § 34.1–2–

106(b) (LexisNexis 2007). The Keltron equipment "was in full conformity with the contract," Fibertection asserts, because the evidence is undisputed "that Keltron equipment was equivalent to or superior to Digitize equipment." In this argument, however, Fibertection again ignores the provisions of the Construction Specifications that, as already discussed, required Digitize equipment. Fibertection's untimely submission of information that the Keltron equipment was as good as or better than the Digitize equipment did not give Bechtel sufficient time to consider the substitution without delaying the project, and imposed no obligation on Bechtel to approve of the substitution. Put another way, the Keltron equipment did not conform because it was not in accordance with Fibertection's obligations under the contract to provide Digitize equipment or obtain approval to substitute Keltron equipment.

[¶ 24] Fibertection cites *Courtesy Enterprises, Inc. v. Richards Laboratories*, 457 N.E.2d 572, 575 (Ind.App.1983), for the proposition that "[i]n determining whether goods are conforming, previous dealings between the parties are relevant." Fibertection asserts that in their prior dealings, Wheeler had always specified brand names on its purchase orders when specific products were required. Because Wheeler's purchase order for this project did not specify Digitize equipment, Fibertection suggests that Digitize equipment was not required.

[¶ 25] Wyoming law similarly provides that parties' course of dealings in prior transactions may "give particular meaning to and supplement or qualify terms of an agreement." Wyo. Stat. Ann. § 34.1-1-205(c) (LexisNexis 2007). However, the statute also provides that the express terms of an agreement and an applicable course of dealing "shall be construed whenever reasonable as consistent with each other; but when such construction is unreasonable express terms control." *Id.* § 34.1-1-205(d). Even if Fibertection is correct that, based on their course of dealings, Wheeler's failure to specify Digitize equipment in its purchase order

should be construed as leaving that choice to Fibertection, that would be inconsistent with the express terms of the Construction Specifications. We uphold the trial court's conclusion that the express terms of the contract were controlling.

[¶ 26] Fibertection also appears to claim that the trial court committed error because its judgment did not cite or rely on the Uniform Commercial Code. We reject that claim because, in the first place, it is factually inaccurate. The trial court's judgment does cite the Uniform Commercial Code, specifically Wyo. Stat. Ann. § 34.1-2-712, under which the trial court concluded that "[i]f the seller breaches the contract, the buyer may 'cover' by making in good faith and without unreasonable delay any reasonable purchase of or contract to purchase goods in substitution for those due from the seller." In the second place, Fibertection has not demonstrated that the trial court's conclusions were inconsistent with the provisions of the Uniform Commercial Code, or erroneous in any other way.

[¶ 27] Finally, we deny Wheeler's request for an award of attorney's fees for this appeal. We have concluded that Fibertection's arguments lack merit, but they were not sufficiently frivolous, or lacking in cogence and supporting legal authority, to justify an award of attorney's fees against Fibertection. *Compare Osborn v. Kilts*, 2006 WY 142, ¶ 14, 145 P.3d 1264, 1268 (Wyo. 2006).

## CONCLUSION

[¶ 28] We find no error in the trial court's conclusions of law, and so affirm the judgment that Fibertection breached its contract with Wheeler.