# THE SUPREME COURT, STATE OF WYOMING

## 2025 WY 89

APRIL TERM, A.D. 2025

August 6, 2025

JEFFRY V. SHEESLEY and DREW W.
SHEESLEY, as Trustees of the DCS Trust dated
May 17, 2005,

Appellants
(Plaintiffs),

v.

ARISTATEK, INC.,

Appellee
(Defendant/Third-Party Plaintiff),

and

SAMUEL BRUCE KING and THAYNE ROUTH,

Appellees                                                      S-24-0262, S-24-0263, S-24-0264
(Third-Party Defendants).

ARISTATEK, INC.,

Appellant
(Defendant/Third-Party Plaintiff),

v.

JEFFRY V. SHEESLEY and DREW W.
SHEESLEY, as Trustees of the DCS Trust dated
May 17, 2005,

Appellees
(Plaintiffs).

SAMUEL BRUCE KING and THAYNE ROUTH,

**Appellants**
**(Third-Party Defendants),**

**v.**

**JEFFRY V. SHEESLEY and DREW W.**
**SHEESLEY, as Trustees of the DCS Trust dated**
**May 17, 2005,**

**Appellees**
**(Plaintiffs).**

### *Appeal from the District Court of Albany County*
### *The Honorable Misha E. Westby, Judge*

*Representing Jeffry Sheesley and Drew Sheesley:*
> *Dennis C. Cook and Craig C. Cook of Cook and Associates, P.C., Laramie, Wyoming. Argument by Mr. Dennis Cook.*

*Representing AristaTek:*
> *Philip A. Nicholas of Nicholas & Tangeman, LLC, Laramie, Wyoming. Argument by Mr. Nicholas.*

*Representing Bruce King and Thayne Routh:*
> *William L. Hiser of Brown & Hiser, LLC, Laramie, Wyoming. Argument by Mr. Hiser.*

### *Before BOOMGAARDEN, C.J., and FOX\*, GRAY, FENN, and JAROSH, JJ.*

\* Justice Fox retired from judicial office effective May 27, 2025, and, pursuant to Article 5, § 5 of the Wyoming Constitution and Wyo. Stat. Ann. § 5-1-106(f) (2023), she was reassigned to act on this matter on May 28, 2025.

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**FENN, Justice.**

[¶1]   This appeal involves three consolidated appeals regarding the collection and payment of three promissory notes (the "Sheesley Notes").  Jeffry Sheesley and Drew Sheesley, Trustees of the DCS Trust dated May 17, 2005 (DCS Trust), filed a complaint against AristaTek, Inc., the promisor under the Sheesley Notes, seeking immediate payment of all amounts due under the notes along with reasonable attorney's fees.  AristaTek requested a declaration that the Sheesley Notes are capital contributions and any outstanding obligations to its other shareholders, Samuel Bruce King and Thayne Routh, are required to be given priority payment over the Sheesley Notes.  The district court dismissed the claims involving Mr. King and Mr. Routh and found those claims failed to present justiciable controversies.  The district court resolved all remaining issues on summary judgment.  It found the Sheesley Notes were loans and clearly reflected the amounts owed, but it denied any request for payment after finding the notes were not immediately due and payable.  Although it found the notes were not payable on demand, the district court awarded DCS Trust attorney fees.  We reverse the district court's finding the promissory notes are not due and payable, order the district court to enter judgment in favor of DCS Trust, including on any award for attorney fees, and affirm the district court's order in all other respects.

## ISSUES

[¶2]    The issues on appeal are:

    I.    Did the district court err when it found the Sheesley Notes are not due and payable on demand?

    II.    Did the district court err when it found the Sheesley Notes are loans and not capital contributions?

    III.    Is payment of the Sheesley Notes equitably subordinated to payment of AristaTek's other outstanding obligations?

    IV.    Did the district court err when it found DCS Trust is entitled to reasonable costs, expenses, and attorney's fees?

    V.    Did the district court err when it found Third-Party Defendants, Mr. King and Mr. Routh, failed to present a justiciable controversy entitling them to declaratory relief?

1

## FACTS

[¶3]   In 1999, David Sheesley, Samuel Bruce King, Thayne Routh, and John Nordin (collectively the "Founders) formed AristaTek, Inc., a Wyoming for-profit corporation. The Founders were all equal shareholders in AristaTek and constituted the Board of Directors.  To form AristaTek, each of the Founders contributed $1,000 in capital and received 2,500 shares of AristaTek.  Thus, each Founder had a 25% interest in the corporation.  From 1999 through approximately 2010, AristaTek operated primarily as a software product manufacturing company, focusing its business on serving governmental entities.  AristaTek's primary income was from software products developed by the employed Founders.  By 2012, AristaTek restructured its business and began providing its services through a licensing arrangement on an annual subscription basis.

[¶4]   In approximately 2009 to 2013, the Founders unanimously agreed to each contribute cash to meet AristaTek's cash requirements "in the form of shareholder loans."  The Founders executed identical promissory notes representing their contributions.  Three promissory notes were issued to David C. Sheesley, and all three notes amounted to a total contribution of $27,815.00 (the "Sheesley Notes"):[1] the first note was dated January 30, 2013, in the amount of $12,500; the second note was dated August 22, 2013, in the amount of $12,500; and the third note was dated December 30, 2013, in the amount of $2,815.  An example of the terms of the promissory notes issued to the Founders, including the Sheesley Notes, were as follows:[2]

### PROMISSORY NOTE

**Date: August 22, 2013**
**Amount: $12,500.00**

1. For the loan of $12,500.00 (twelve thousand five hundred dollars), AristaTek, Inc., a Wyoming corporation, the "Promisor" promises to pay to the order of David C. Sheesley, Trustee or his successors in trust under the DCS Trust dated May 17, 2005 (hereinafter "Promisee") the sum of $12,500.00 plus interest of 6% per annum based on a 365 or 366 day year for 24 months, unless changed by a written amendment to this note.

---

[1] Two of the promissory notes were payable to the order of "David C. Sheesley, Trustee or his successors in the trust under the DCS Trust dated May 17, 2005," and the third promissory note was payable to David C. Sheesley or his estate.

[2] We include a copy of one of the Sheesley Notes as an example.  The other Founders' promissory notes all have the same underlying terms as the Sheesley Notes except for the promisee, date, and amount of the loan.

2. The time period of the loan shall begin on the date this note is executed and shall end 24 months from that date unless that period is changed by written agreement between the Promisor and Promisee. The Promisor may also elect to pay off all or part of the loan at any time prior to the final payment due date without penalty. Any partial prepayment thereafter shall be applied against the principal amount outstanding and shall not postpone the due date of any subsequent payments or change the amounts of such payments.

3. This Note shall terminate when the obligation evidenced by this Note has been paid in full.

4. This Note shall not be assignable.

5. The Promisee shall be entitled to collect all reasonable costs and expense of collection and/or suit, including, but not limited to, reasonable attorney fees. Promisor hereby waives presentment, notice of dishonor and protest.

6. In the event that the Promisor is sold and monies are received from that sale, proceeds from the sale shall be used to pay off this note before any capital distributions are made.

AristaTek, Inc.,
A Wyoming corporation

[¶5]    Around the same time the Founders executed the promissory notes, two of the Founders, Mr. Routh and Mr. King (collectively "Third-Party Defendants"), made additional financial contributions.  Mr. Routh deferred his bonus, which AristaTek treated as a loan.  Mr. King also loaned additional funds for AristaTek to continue operating and to settle a claim.  AristaTek further obtained various loans, a line of credit, and accumulated credit card debt.

[¶6]    In October 2020, David Sheesley passed away without ever having demanded payment on the Sheesley Notes.  None of the other Founders made a demand for payment or received payment on their notes prior to Mr. Sheesley's death.  DCS Trust filed a complaint against AristaTek on March 21, 2022.  DCS Trust requested the district court to determine the amounts due and owing on the Sheesley Notes and order AristaTek to pay this amount immediately.

[¶7]    AristaTek answered and filed a counterclaim and third-party complaint seeking declaratory judgment finding "(1) some of the Initial Founders Loans were made unequally, entitling the Founders contributing unequally to an equitable right to have their loans paid first, (2) the Initial Founding Loans are more characteristic of and should be treated for repayment purposes as capital contributions, and/or (3) [DCS Trust's] Initial Founders' Loans used to capitalize [AristaTek] are subordinate to subsequent obligations of AristaTek to its Shareholders who later made new loans not in *pari passu*.[3]"  In its third-party complaint, AristaTek filed a declaratory action against Third-Party Defendants, Mr. King and Mr. Routh, claiming Third-Party Defendants as the remaining shareholders "are indispensable parties to [the] action."  Third-Party Defendants filed an answer and counterclaim against AristaTek and a third-party complaint against DCS Trust.  They asserted claims similar to AristaTek's claims.  They asserted contingent counterclaims contending the promissory notes issued to the Founders in 2012 to 2013 were capital contributions and alleged any contributions they made were required to have priority payment over the Sheesley Notes.  In their third-party complaint against DCS Trust, they requested a declaratory judgment preventing DCS Trust from collecting on the Sheesley Notes until AristaTek could satisfy its outstanding obligations to creditors, including the Third-Party Defendants.

[¶8]    On August 9, 2022, DCS Trust filed a motion to dismiss AristaTek's third-party complaint and Third-Party Defendants' counterclaims and third-party complaint under Rule 12(b)(6) of the Wyoming Rules of Civil Procedure (LexisNexis 2023) ("W.R.C.P.").  After a hearing, the district court granted the motion to dismiss, finding it lacked jurisdiction over the declaratory judgment actions presented by AristaTek and Third-Party Defendants because they failed to present justiciable controversies.  The district court found the issues raised by AristaTek and Third-Party Defendants all involved future rights or anticipated disputes or controversies which the district court had no power to determine.

[¶9]    AristaTek and DCS Trust proceeded to file competing motions for summary judgment on the remaining claims.  AristaTek asked the district court to declare as a matter of law: the Sheesley Notes (1) are equity and/or capital contributions and are not true loans; (2) are not enforceable until AristaTek is sold; (3) are equitably subordinated to the newer loans given by Third-Party Defendants; and (4) the directors have no duty to repay the loans nearly seven years after the due date.  DCS Trust claimed there is no proof of any written agreement converting the Sheesley Notes to capital contributions or subordinating payment on them to AristaTek's other debt obligations.  DCS Trust claimed absent any written amendment to the Sheesley Notes, the Sheesley Notes are due and payable upon demand along with all reasonable costs and expenses of collecting on the debt, including attorney fees, based on the clear and unambiguous language of the notes.

---

[3] The phrase "*pari passu*" means "[p]roportionally; at an equal pace; without preference[.]" *Pari Passu*, *Black's Law Dictionary* (12th ed. 2024).

4

[¶10] Following a hearing, the district court issued an order on summary judgment resolving all outstanding issues. The district court held the Sheesley Notes are clear and unambiguous as to the amounts due and payable. However, it found the Sheesley Notes are not currently due and payable because there is no payable on demand provision. It found because the Sheesley Notes are silent as to being payable on demand, the notes are not required to be repaid until AristaTek is sold. The district court denied AristaTek's motion for summary judgment, finding it would be contrary to the clear language of the Sheesley Notes to treat the notes as capital contributions. It further found there is no priority of payment to AristaTek's other outstanding obligations. However, the district court held the promissory notes issued to the Founders in 2012 to 2013 should all be paid equitably, meaning if AristaTek repays any of the Founders' promissory notes, then they all need to be repaid. The district court further found the Sheesley Notes "unequivocally provide[] for the recovery of costs and fees" and do not limit such recovery by the outcome of litigation, and it granted DCS Trust's request for reasonable attorney fees.

[¶11] DCS Trust filed a timely appeal under docket S-20-0262. AristaTek also filed a timely appeal under docket S-20-0263. Third-Party Defendants filed a cross appeal under docket S-20-0264. We consolidated all three appeals on our own motion for the purposes of briefing, oral argument, and decision.

## DISCUSSION

[¶12] The issues before us involve the three consolidated appeals of DCS Trust, AristaTek, and Third-Party Defendants. DCS Trust appeals the portion of the district court's summary judgment order holding the Sheesley Notes are not immediately due and payable. AristaTek appeals the district court's decision finding DCS Trust is entitled to attorney fees under the terms of the Sheesley Notes. Additionally, AristaTek raises two issues conditioned on our decision involving the issue raised by DCS Trust. If we find the Sheesley Notes are immediately due and payable, then AristaTek claims the district court erred when it found the promissory notes are not capital contributions and when it found payment on the Sheesley Notes is not equitably subordinated to AristaTek's other outstanding obligations, including to the Third-Party Defendants. Third-Party Defendants' issue on appeal is also conditioned on our decision on DCS Trust's appeal. They claim if we reverse and find the Sheesley Notes are due and payable, then the district court's order dismissing their contingent counterclaims against AristaTek and their third-party complaint against DCS Trust should also be reversed. We address each of the issues raised in the separate appeals in turn.

I.   *The district court erred when it found the Sheesley Notes were not due and payable upon demand.*

[¶13] DCS Trust argues the district court misinterpreted the clear and unambiguous language of the due date of the Sheesley Notes. The district court held the Sheesley Notes

5

contained no payable on demand provision, and therefore the parties to the notes intended the notes to be due and payable whenever the company chose or when AristaTek is sold. Despite this finding, the district court held the terms of the Sheesley Notes were for 24 months with interest only accruing during those 24 months. DCS Trust argues the Sheesley Notes were payable on demand after 24 months, and AristaTek's failure to pay the notes upon maturity caused interest to continue to accrue. AristaTek claims under the terms of the Sheesley Notes the notes are not due and payable and interest only accrues for 24 months. However, it claims even if DCS Trust can enforce the Sheesley Notes, DCS Trust is still estopped from enforcing the notes. Based on the plain language of the Sheesley Notes, we agree with DCS Trust and find the district court erred when it found the notes were not due after the expiration of the 24-month term. We find DCS Trust can enforce the terms of the Sheesley Notes, but it can only collect 24 months of interest.

[¶14]  In reviewing a district court's order on summary judgment, we determine whether there is no genuine issue of material fact and whether the prevailing party is entitled to judgment as a matter of law. W.R.C.P. 56(a) (2025); *Primrose Ret. Cmty., LLC v. Ghidorzi Constr. Co., LLC*, 2023 WY 15, ¶ 8, 523 P.3d 1219, 1224 (Wyo. 2023) (quoting *Peterson v. Meritain Health, Inc.*, 2022 WY 54, ¶¶ 14–16, 508 P.3d 696, 704 (Wyo. 2022)). "We review a summary judgment in the same light as the district court, using the same materials and following the same standards." *Id.* "We examine the record from the vantage point most favorable to the party opposing the motion, and we give that party the benefit of all favorable inferences that may fairly be drawn from the record." *Id.* If the terms of a promissory note are unambiguous, then the interpretation of those terms poses a question of law which we review de novo. *Y-O Invs., Inc. v. Emken*, 2006 WY 112, ¶ 8, 142 P.3d 1127, 1130 (Wyo. 2006). However, if we find the language of a promissory note "is not clear or there are other material issues of fact, summary judgment is not appropriate." *Hurst v. Metro. Prop. & Cas. Ins. Co.*, 2017 WY 104, ¶ 10, 401 P.3d 891, 895 (Wyo. 2017); *Prudential Preferred Props. v. J & J Ventures, Inc.*, 859 P.2d 1267, 1271 (Wyo. 1993).

[¶15]  "[A] promissory note is a species of contract subject to the ordinary requirements of contract law." *Prudential Preferred Props.*, 859 P.2d at 1271. To determine the parties' contractual obligations, the court must interpret a promissory note by determining the intent of the parties. *Eiden Constr., LLC v. Hogan & Assocs. Builders, LLC*, 2024 WY 138, ¶ 44, 561 P.3d 304, 318 (Wyo. 2024). We initially determine whether the language of the promissory note is clear and unambiguous. *Hurst*, 2017 WY 104, ¶ 11, 401 P.3d at 895 (quoting *Fox v. Wheeler Elec., Inc.*, 2007 WY 171, ¶ 10, 169 P.3d 875, 878 (Wyo. 2007)). If it is unambiguous, then we determine the parties' intent from the contract language alone. *Id.* In the absence of any ambiguity, we will enforce the terms of the promissory note "because no construction is appropriate." *Eiden Constr.,* ¶ 44, 561 P.3d at 318 (quoting *Larson v. Burton Constr., Inc.*, 2018 WY 74, ¶ 16, 421 P.3d 538, 544 (Wyo. 2018)).

[¶16]  "A promissory note is an instrument for the payment of money only, provided that it contains an unconditional promise by the borrower to pay the lender over a stated period

of time." 1 *Williston on Contracts* § 1:11 (4th ed. May 2025 Update). The terms of the Sheesley Notes provide the stated period of time for each note is 24 months, beginning on the date the parties execute the note. The Sheesley Notes anticipate the 24-month period can be changed but only upon written agreement. While the notes contemplate AristaTek may be sold within that 24-month term, the notes do not require AristaTek to be sold—as evidenced by the language "in the event" used in paragraph 6—before the notes mature. Further, the plain language of the notes does not contemplate an automatic extension of the 24-month term in the event AristaTek has not yet paid off the notes and/or AristaTek has not been sold. The only provision allowing the 24-month term to be extended is found in paragraphs 1 and 2, which allows the 24-month term to be changed upon "written agreement."

[¶17]   AristaTek admitted it did not make any written changes to the Founders' promissory notes, including the Sheesley Notes. Accordingly, under the plain language of the Sheesley Notes and because there is no written agreement extending the term of the notes, the notes were due and payable after expiration of the 24-month term. 10 C.J.S. *Bills and Notes* § 114 (May 2025 Update) ("Maturity, when applied to commercial paper, means the time when the paper becomes due and demandable. A debt on a promissory note becomes due on the note's maturity date."); 11 Am. Jur. 2d *Bills and Notes* § 162 (May 2025 Update); *Castle Rock Bank v. Team Transit, LLC*, 292 P.3d 1077, 1087 (Colo. App. 2012); *see also* Wyo. Stat. Ann. § 34.1-3-108 (2021). All the 24-month terms of the Sheesley Notes have expired, and the notes have reached maturity and are due.

[¶18]   DCS Trust argues AristaTek's failure to repay the loans within the 24-month period rendered the debts not only payable on demand, but the 6% interest described in paragraph 1 of the Sheesley Notes continued to accrue on the unpaid balance. AristaTek claims interest is only promised to be paid on the notes for 24 months. The Sheesley Notes provide: "'Promisor' promises to pay . . . the sum of $12,500.00 plus interest of 6% per annum based on a 365- or 366-day year for 24 months, unless changed by a written amendment to this note." The plain language of the Sheesley Notes expressly limited the accrual of interest to only 24 months. However, DCS Trust argues paragraph 3 of the Sheesley Notes, which provides "[t]his Note shall terminate when the obligation evidenced by this Note has been paid in full[,]" indicates interest continued to accrue until the notes were paid in full. Paragraph 3 does not extend the amount of interest due under the notes and instead indicates when the notes terminate. DCS Trust has not cited any pertinent legal authority that would compel a contrary conclusion. Because we are limited to the language within the four corners of the Sheesley Notes, we find interest only accrued for 24 months. *Hurst*, 2017 WY 104, ¶ 11, 401 P.3d at 895 (quoting *Fox,* 2007 WY 171, ¶ 10, 169 P.3d at 878.

[¶19]   In its brief in S-24-0263, AristaTek alleges if we find DCS Trust has the right to enforce the Sheesley Notes, then DCS Trust is still estopped from enforcing the notes before the sale of AristaTek because David Sheesley did not take any action to enforce the

7

notes during his lifetime. The language of the Sheesley Notes does not provide a waiver of any right to enforce payment based on the failure to demand payment after the maturity date. While DCS Trust may have waived any right to claim default upon its failure to object to the non-payment of the notes, there is no language in the Sheesley Notes indicating a waiver of any right by DCS Trust to enforce payment after maturity, including no written amendment changing the terms of the notes. *See generally* 10 C.J.S. *Bills and Notes* § 244 (May 2025 Update) (discussing a waiver provision must specifically state what rights are surrendered under a note, and a waiver will not be inferred from acts or language); 11 Am. Jur. 2d *Bills and Notes* § 162 (May 2025 Update) (discussing a waiver to claim default upon a failure to object to untimely payment). Therefore, because the district court erred when it found the Sheesley Notes were not due and payable upon DCS Trust's demand, we remand to the district court to enter judgment in favor of DCS Trust for the principal amount due under the Sheesley Notes, plus 6% interest for 24 months.

## II. The district court did not err when it found the Sheesley Notes were loans and not capital contributions.

[¶20]   AristaTek claims if we find the Sheesley Notes are due and payable, then we should review the district court's decision finding the Sheesley Notes are loans and not capital contributions. AristaTek argues this Court should rule as a matter of law the advances made by the Founders, as documented by the promissory notes, are capital contributions. AristaTek suggests "Wyoming case law recognizes that when debt instruments are not treated as true loans, they are properly recharacterized as capital contributions." In making its argument, AristaTek relies on *In re Kite Ranch, LLC v. Powell Fam. of Yakima, LLC*, 2008 WY 39, 181 P.3d 920 (Wyo. 2008).

[¶21] Contrary to AristaTek's assertion, *In re Kite Ranch* does not stand for the proposition debt instruments can be recharacterized as capital contributions based on shareholder treatment. *In re Kite Ranch* involved members seeking declaration of their respective rights in a limited liability company. 2008 WY 39, ¶ 1, 181 P.3d at 921. One member claimed he was entitled to manage the company because he was the only member with a positive capital account. *Id.* at ¶ 23, 181 P.3d at 926. We found the district court did not abuse its discretion in granting a preliminary injunction to the member with a positive capital account because Wyoming Statute § 17-15-116[4] plainly stated management is vested in the members in proportion to their capital contributions, and the evidence established he was the only member with a positive capital account. *Id.* at ¶¶ 24–32, 181 P.3d at 926–29. In finding the member had a positive capital account, the district court looked at the member's initial contribution, which was not accounted for through a note, mortgage, security agreement, or other written evidence of debt. *Id.* at ¶ 25, 181 P.3d at

---

[4] In 2010, the Wyoming Legislature repealed Wyoming Statute § 17-15-116 when it "update[ed] and modifi[ed] statutes to comply with the revised uniform limited liability company act in part and with exceptions and changes[.]" 2010 Wyo. Sess. Laws 429, 487.

927–28. Additionally, income tax returns treated the member's contribution as a capital contribution. *Id.* The documents adopted by the company clearly showed the contribution was capital rather than a loan. *Id.*

[¶22] Unlike *In re Kite Ranch*, the contributions in this case are evidenced by written promissory notes. Therefore, we must interpret the promissory notes by affording the words used in each note "the plain meaning that a reasonable person would give to them." *See Ecocards v. Tekstir, Inc.*, 2020 WY 38, ¶ 18, 459 P.3d 1111, 1118 (Wyo. 2020) (quoting *Claman v. Popp*, 2012 WY 92, ¶ 26, 279 P.3d 1003, 1013 (Wyo. 2012)); *Prudential Preferred Props.*, 859 P.2d at 1271 (holding a promissory note is subject to contract law). We enforce the promissory note "according to its terms because no construction is appropriate." *Ecocards*, 2020 WY 38, ¶ 18, 459 P.3d at 1118 (quoting *Claman*, 2012 WY 92, ¶ 26, 279 P.3d at 1013). We cannot insert any words into a promissory note under the guise of interpretation and instead must presume each provision in the note has a purpose. *Rafter J. Ranch Homeowner's Ass'n v. Stage Stop, Inc.*, 2024 WY 114, ¶ 34, 558 P.3d 562, 572 (Wyo. 2024); *Eiden Constr.,* 2024 WY 138, ¶ 44, 561 P.3d at 318. Our cardinal principle is to give effect to all the promissory note provisions and to render each provision consistent while avoiding any construction "which would render a provision meaningless." *Eiden Constr.,* 2024 WY 138, ¶ 44, 561 P.3d at 318; *Herling v. Wyo. Mach. Co.*, 2013 WY 82, ¶ 52, 304 P.3d 951, 964 (Wyo. 2013).

[¶23] The written documents evidencing the amounts contributed by each partner are identified by the words "promissory note" at the top of the document. A promissory note is a written promise to pay a monetary obligation to another party. *Cooper v. Town of Pinedale*, 1 P.3d 1197, 1204 (Wyo. 2000); Wyo. Stat. Ann. § 34.1-9-102(a)(lxviii) (2021); *Note (promissory note)*, *Black's Law Dictionary* (12th ed. 2024). Paragraph 1 of the promissory notes identify the amounts as a "loan." Paragraph 2 also identifies the amounts contributed as a "loan" that AristaTek promises to pay. A loan is the act of lending money for temporary use. *Loan*, *Black's Law Dictionary* (12th ed. 2024). Furthermore, paragraph 6 anticipates if AristaTek is sold then AristaTek is to pay off the promissory notes "before any capital distributions are made." The promissory notes specifically identify the notes as loans and reference capital distributions separately. To give the provisions of the promissory notes a consistent meaning, the amounts paid under the promissory notes must be interpreted as loans and not capital contributions. The district court did not err when it found the promissory notes are loans and denied AristaTek's motion for summary judgment.

### III. *We decline to order priority of payment of AristaTek's outstanding obligations to Third-Party Defendants, Mr. King and Mr. Routh.*

[¶24] AristaTek asks this Court to "determine as a matter of law that the later loans given by only some of the Founders disproportionately are entitled to repayment first." It requests we apply "the doctrine of equitable subordination to remedy inequity and

9

unfairness." It claims under this doctrine the unequal advances made by Third-Party Defendants are entitled to priority repayment over all the other promissory notes and capital contributions.

[¶25] It is well-established "[c]ourts are not at liberty to rescue parties from the consequences of their unwisely made bargains and we cannot rewrite the [promissory notes] under the guise of judicial construction." *Skaf v. Wyo. Cardiopulmonary Servs., P.C.*, 2021 WY 105, ¶ 42, 495 P.3d 887, 901 (Wyo. 2021) (quoting *P & N Invs., LLC v. Frontier Mall Assocs., LP*, 2017 WY 62, ¶ 22, 395 P.3d 1101, 1107 (Wyo. 2017)). "[W]e are bound to apply [the terms of the promissory notes] as they have been scrivened." *Id.* (quoting *Pope v. Rosenberg*, 2015 WY 142, ¶ 20, 361 P.3d 824, 830 (Wyo. 2015)).

[¶26] The only term in the promissory notes about priority repayment is found in paragraph 6 of each note. Paragraph 6 anticipates if AristaTek is sold then the promissory notes are to be given priority payment over any capital distribution from the proceeds of the sale. The newer promissory notes, which are unequal contributions made by Third-Party Defendants, do not contain any provision about the unequal payments being given priority payment. Furthermore, there is no written agreement to change the payment terms of the Sheesley Notes. We therefore decline AristaTek's invitation to give priority of payment to the unequal loans because it would require us to add language to the promissory notes, which we are not at liberty to do.

[¶27] The district court concluded the Founders' promissory notes "are to be paid equitably," and if AristaTek is going to repay the notes, then it needs to repay all the Founders' notes. AristaTek did not ask us to consider the effect of this ruling if we found the Sheesley Notes were due and payable but rejected its equitable subordination argument. It also did not argue the district court erred or abused its discretion when it ruled the Founders' promissory notes "are to be paid equitably." "We will not frame the issues for the litigants and will not consider issues not raised by them and not supported by cogent argument and authoritative citation." *Schroth v. Kirk*, 2025 WY 24, ¶ 38 n.3, 564 P.3d 570, 582 n.3 (Wyo. 2025) (quoting *Pettengill v. Castellow*, 2022 WY 144, ¶ 24, 520 P.3d 105, 113 (Wyo. 2022)) (internal quotations omitted). We therefore decline to consider AristaTek's argument on priority of payment of the promissory notes any further.

### IV. DCS Trust is entitled to all reasonable costs, expenses, and attorney fees associated with collection and suit under the terms of the Sheesley Notes.

[¶28] AristaTek asserts the district court erred when it found DCS Trust is entitled to recover attorney fees under the terms of the Sheesley Notes. AristaTek asserts the Sheesley Notes do "not provide for [attorney] fees for suits that do not result in collection, nor does it provide for fees to seek declaratory relief." DCS Trust claims the district court's "decision to award the DCS Trust reasonable attorney fees and costs in this case is supported by the [d]istrict [c]ourt's denial of AristaTek's summary judgment motion and

the partial grant of the DCS Trust's summary judgment motion."

[¶29] "Ordinarily, we review a district court's denial of an attorney fee award for abuse of discretion." *Thorkildsen v. Belden*, 2011 WY 26, ¶ 8, 247 P.3d 60, 62 (Wyo. 2011). However, we apply our rules of contract interpretation when we determine whether a party is entitled to attorney fees under the terms of a promissory note. *Id.* When the terms of the promissory note are clear and unambiguous, our interpretation on an attorney's fee provision is a matter of law, which we review de novo, giving no deference to the district court's decision. *Id.*

[¶30] Here, the Sheesley Notes provide in paragraph 5:

> The Promisee shall be entitled to collect all reasonable costs
> and expense of collection and/or suit, including, but not limited
> to, reasonable attorney fees.

DCS Trust filed suit against AristaTek requesting the district court "determine all amounts due and owing on the [Sheesley Notes] . . . including interest to date" and to "order [AristaTek] to immediately pay to [DCS Trust] all amounts to be due and owing to [DCS Trust] for the [Sheesley Notes]." DCS Trust's action is clearly an attempt to collect and enforce under the terms of the Sheesley Notes. *Douglas as Tr. of Patricia Ann Douglas Revocable Tr. v. Jackson Hole Land Tr.*, 2020 WY 69, ¶ 23, 464 P.3d 1223, 1230 (Wyo. 2020) (citing *Careers USA, Inc. v. Sanctuary of Boca, Inc.*, 705 So. 2d 1362, 1364 (Fla. 1998)) (recognizing a suit for declaratory judgment may constitute an action to enforce the terms and conditions of a written instrument and allow for attorney's fees to be awarded under the written instrument). DCS Trust is entitled under the terms of the Sheesley Notes to collect and recover reasonable attorney fees.

[¶31] When a promissory note "allows for reasonable attorney's fees in enforcing its provisions, those fees are recoverable in the appeal and for trial court matters." *Holloway v. Hidden Creek Outfitters, LLC*, 2025 WY 59, ¶ 33, 569 P.3d 756, 764 (Wyo. 2025) (quoting *Mascaro v. Mascaro*, 2024 WY 45, ¶ 24, 547 P.3d 321, 327 (Wyo. 2024)). "Even with a contractual provision for attorney's fees, we have stated a trial court has the discretion to exercise its equitable control to allow only such sum as is reasonable or the court may properly disallow attorney's fees altogether if such recovery would be inequitable." *Id.* at ¶ 31, 569 P.3d at 764. "To determine the reasonableness of the fees requested, Wyoming courts apply the federal 'lodestar' test." *Circle C Res. v. Hassler*, 2023 WY 54, ¶ 23, 530 P.3d 288, 295 (Wyo. 2023). Additionally, the Wyoming legislature has identified discretionary factors which the district court may consider while exercising its discretion in awarding attorney's fees. Wyo. Stat. Ann. § 1-14-126(b) (2023).

[¶32] Here, the record is devoid of whether the district court has awarded an amount for attorney fees, or whether it has determined if the requested attorney fees are reasonable.

We therefore remand to the district court to determine a reasonable award of attorney fees, costs, and expenses for both the trial court level and the appellate level. *See Circle C Res.*, 2023 WY 54, ¶¶ 25-37, 530 P.3d at 296–98 (discussing generally the appellate court determines the proper amount of fees to be awarded for legal work on appeal but remanding to the district court to determine the appellate fee award when the record was devoid of an analysis on the trial court's award because the trial court "has a more comprehensive understanding of the litigation").

## V. Third-Party Defendants' counterclaim and third-party complaint fail to present a justiciable controversy.

[¶33] The district court dismissed AristaTek's third-party complaint and Third-Party Defendants' counterclaim and third-party complaint finding it lacks jurisdiction over the claims because the claims fail to present justiciable controversies. Third-Party Defendants allege the district court erred when it dismissed their counterclaims and third party-complaint. They state their appeal is contingent on whether this Court finds the Sheesley Notes are due and payable because upon reversal a justiciable controversy will exist regarding the repayment terms and whether those terms have been modified by agreements and actions of the Founders.

[¶34] We review a motion to dismiss under W.R.C.P. 12(b)(6) and jurisdictional issues regarding the justiciability of a declaratory judgment action de novo. *Allred v. Bebout*, 2018 WY 8, ¶ 29, 409 P.3d 260, 268 (Wyo. 2018). "We employ the same standards and examine the same materials as the district court: we accept the facts alleged in the complaint or petition as true and view them in the light most favorable to the non-moving party." *Id.* (quoting *Moose Hollow Holdings, LLC v. Teton Cty. Bd. of Cty. Comm'rs*, 2017 WY 74, ¶ 20, 396 P.3d 1027, 1033 (Wyo. 2017)). "[W]e focus on the allegations contained in the complaint [and counterclaim] and liberally construe them in the light most favorable to the plaintiff." *Id.* (quoting *William F. West Ranch, LLC v. Tyrrell*, 2009 WY 62, ¶ 9, 206 P.3d 722, 726 (Wyo. 2009)). Dismissal is appropriate only if it is certain from the face of the complaint or counterclaim the plaintiff cannot assert any facts entitling them to relief. *Protect Our Water Jackson Hole v. Wyo. Dep't of Env't Quality*, 2025 WY 36, ¶ 11, 566 P.3d 181, 185 (Wyo. 2025) (quoting *Hull v. N. Lincoln Hosp. Dist.*, 2025 WY 6, ¶ 19, 561 P.3d 791, 796 (Wyo. 2025)). "[W]e may affirm a district court decision on any basis supported by the record." *Id.*

[¶35] For a district court to have jurisdiction over a declaratory judgment action, "the 'right' to be declared must fall within the scope of the act and the plaintiff must be an 'interested' person." *Int'l Ass'n of Firefighters Loc. Union No. 279 v. City of Cheyenne*, 2013 WY 157, ¶ 20, 316 P.3d 1162, 1169 (Wyo. 2013) (quoting *William F. West Ranch*, 2009 WY 62, ¶ 11, 206 P.3d at 726–27). The scope of the Wyoming Declaratory Judgments Act provides the district court "may declare rights, status and other legal

relations whether or not further relief is or could be claimed." Wyo. Stat. Ann. § 1-37-102 (2021). An interested person and a right subject to declaration are defined as:

> Any person interested under a . . . written contract or other writings constituting a contract, or whose rights, status or other legal relations are affected . . . by a . . . contract . . . may have any question of construction or validity arising under the instrument determined and obtain a declaration of rights, status or other legal relations.

Wyo. Stat. Ann. § 1-37-103 (2021).

[¶36]  The requirement of a "person interested" "captures the basic doctrine that there must be a justiciable controversy before relief will be granted." *Forbes v. Forbes*, 2022 WY 59, ¶ 33, 509 P.3d 888, 897 (Wyo. 2022) (quoting *William F. West Ranch,* 2009 WY 62, ¶ 11, 206 P.3d at 727). "To determine whether a justiciable controversy exists under the . . . Declaratory Judgments Act, the Court has long applied the prudential standing test articulated in *Brimmer*." *Id. Brimmer* articulated the following four-part test:

> 1. The parties have existing and genuine, as distinguished from theoretical, rights or interests.
>
> 2. The controversy must be one upon which the judgment of the court may effectively operate, as distinguished from a debate or argument evoking a purely political, administrative, philosophical or academic conclusion.
>
> 3. It must be a controversy the judicial determination of which will have the force and effect of a final judgment in law or decree in equity upon the rights, status or other legal relationships of one or more of the real parties in interest, or, wanting these qualities to be of such great and overriding public moment as to constitute the legal equivalent of all of them.
>
> 4. The proceedings must be genuinely adversary in character and not a mere disputation, but advanced with sufficient militancy to engender a thorough research and analysis of the major issues.

*Id.* at ¶ 34, 509 P.3d at 898 (quoting *Johnson Cnty. Ranch Improvement #1, LLC v. Goddard*, 2020 WY 115, ¶ 51, 471 P.3d 307, 322 (Wyo. 2020)).

13

[¶37]  In applying the first part of the *Brimmer* test, we have held "[t]he Declaratory Judgments Act gives the courts no power to determine future rights or anticipated disputes or controversies." *Id.* at ¶ 36, 509 P.3d at 898 (quoting *William F. W. Ranch,* 2009 WY 62, ¶ 13, 206 P.3d at 727).  For the district court to act under the Declaratory Judgments Act there must be "an actual and existing disagreement." *William F. W. Ranch,* 2009 WY 62, ¶ 18, 206 P.3d at 728 (citing *Anderson v. Wyo. Dev. Co.*, 154 P.2d 318, 341–42 (Wyo. 1944)).  The district court cannot "decide or declare the rights or status of parties upon a state of facts which is future, contingent, and uncertain." *Id.*  Additionally, a party seeking declaration "must show a 'perceptible,' rather than a 'speculative' harm from the action. A remote possibility of injury is not sufficient to confer" jurisdiction under the Declaratory Judgments Act. *Forbes*, 2022 WY 59, ¶ 37, 509 P.3d at 899 (citation modified).

[¶38]  Third-Party Defendants filed what they labeled as a "contingent counterclaim" against AristaTek and stated they "only assert [such claims] if the [district] [c]ourt should proceed to entertain and enforce the claims of the DCS [T]rust."  They also filed a third-party complaint against DCS Trust claiming DCS Trust is seeking out-of-priority repayment of the Sheesley Notes.  In their complaint, Third-Party Defendants allege all promissory notes have reached maturity but AristaTek's obligations to Third-Party Defendants have priority repayment "because all shareholders understood that to be the case when made disproportionate loans (cash infusions) to AristaTek[.]"  Third-Party Defendants suggest they are entitled to a declaration of right to have the promissory notes repaid at "such time as all of the Founders and Shareholders shall agree and then only in such amounts and on such terms as agreed by all of the Founders and Shareholders or upon dissolution of the Company."  They also assert DCS Trust should be enjoined from enforcing the Sheesley Notes "until such time as AristaTek should be in a position to satisfy all of its creditors, including its outstanding obligations to [Third-Party Defendants] . . . on equal and equitable terms among all remaining Founders."

[¶39]  Third-Party Defendants did not seek payment of their own outstanding promissory notes but instead sought to preclude DCS Trust from collecting on the debts secured by the Sheesley Notes until AristaTek's other financial obligations were paid.  They did not claim there was a written agreement changing the payment terms of the promissory notes, which expressly required "a written amendment" to change the payment terms.  Instead, they claimed the payment priority was understood by all shareholders.  Furthermore, Third-Party Defendants claimed the district court should enjoin DCS Trust from enforcing its promissory notes because "if" the promissory notes are deemed immediately payable, then AristaTek will "be stripped of operating capital (cash) due to the untimely repayment and the company will be put at risk of insolvency."  Third-Party Defendants' counterclaims and complaint were entirely contingent on whether the district court enforced the written terms of the Sheesley Notes.  Additionally, their claims about AristaTek's financial ability to pay the promissory notes and their request for DCS Trust to be enjoined from enforcing the terms of the Sheesley Notes are claims involving speculative harm, the determination of future rights, and anticipated disputes or controversies.  While Third-Party Defendants

14

admit the orders issued in this case will not have a res judicata effect on them because they were not parties to the proceeding, they assert there is a justiciable controversy because the decision "is certainly precedent for the Court's future reading of the remaining Founder's Notes held by [Third-Party Defendants.]" Because Third-Party Defendants' claims are speculative and contingent on future events, such as Third-Party Defendants seeking payment of their own promissory notes after this appeal, there is no justiciable controversy, and the district court did not err by granting DCS Trust's motion to dismiss. *See Forbes*, 2022 WY 59, ¶¶ 36–38, 509 P.3d at 898–99 (finding the district court is without power to determine a claim for declaratory relief out of concerns for future ability to transfer shares because it is a claim for determination of future rights or anticipated disputes and a request for declaratory relief regarding an alleged devaluation of shares is merely speculative and not a justiciable controversy).

## CONCLUSION

[¶40]   The district court erred when it found the Sheesley Notes were not due and payable at the time of maturity.  Because DCS Trust filed a suit to collect on the Sheesley Notes, it is entitled to attorney fees at both the district court and appellate levels.  We affirm the district court's decision finding the Sheesley Notes are loans and not capital contributions and its decision not to equitably subordinate payment of the Sheesley Notes to AristaTek's other outstanding obligations.  We also find the district court did not err when it found Third-Party Defendants failed to present a justiciable controversy and dismissed their claims.  On remand, the district court should apply the lodestar test and discretionary factors in awarding DCS Trust its reasonable attorney fees, expenses, and costs under the terms of the Sheesley Notes.  The district court should enter judgment in favor of DCS Trust for the principal amount and 24 months of interest due under the Sheesley Notes, and for any attorney fees, expenses, and costs ordered for both the trial court level and the appellate level.

15